Debra Kay MURRAY, Petitioner,

v.

SAN JACINTO AGENCY, INC., d/b/a/
SJA Brokerage, Inc., et al.,
Respondents.

No. C–8299.

Supreme Court of Texas.

April 18, 1990.
Rehearing Overruled Jan. 23, 1991.

Dennis L. Richard, Bryan H. Hall, El Paso, for petitioner.

Walter A. Locker, III, Jack Q. Tidwell, Randal Patterson and Daniel J. Hollmann, Odessa, for respondents.

GONZALEZ, Justice.

This appeal involves limitations on claims against an insurer for breach of the duty of good faith and fair dealing.

Debra Kay Murray brought this action against San Jacinto Agency (SJA) and Ector County Independent School District (ECISD) alleging wrongful denial of insurance coverage. SJA and ECISD moved separately for summary judgment. The trial court granted ECISD's motion for summary judgment on the ground that governmental immunity precluded suit against the school district. The trial court granted SJA's motion on the ground that Murray's suit was barred by limitations. The court of appeals affirmed. 759 S.W.2d 778. Murray did not appeal as to ECISD so we address only the summary judgment in favor of SJA. We reverse the judgment of the court of appeals and in so doing, modify the limitations holding announced in *Arnold v. National County Mut. Fire Ins. Co.*, 725 S.W.2d 165, 168 (Tex.1987). Because we have modified the law, this cause is remanded to the trial court in the interest of justice.

## Facts

ECISD established a self-funded group medical insurance program for its employees and their dependents. Under this program, ECISD paid premiums into a trust that was administered by SJA for a fee. Murray was covered under the plan as a dependent of her husband, Alvin Murray. She filed for divorce in the spring of 1984; she remained married, however, throughout the calendar year 1984. Three days after Murray filed for divorce, her husband requested that ECISD and SJA drop her from the insurance coverage.

In the summer of 1984, Murray learned that she had developed chronic pancreatitis. She sought coverage for treatment of her condition under the health insurance policy. Due to her husband's request that she be taken off the insurance program, SJA refused to verify coverage on September 5, 1984. This refusal to verify coverage, essentially a denial of coverage, left Murray unable to obtain much-needed medical treatment. On March 15, 1985, however, SJA admitted that its denial was unwarranted and reinstated coverage retroactive to spring 1984.

Murray filed suit against SJA on March 27, 1986, alleging only *negligent* denial of coverage. Citation was not successfully served until January 21, 1987, 10 months later. Murray subsequently amended her petition on September 2, 1987 to plead her good faith claim for the first time.[1]

## *Commencement of Limitations*

The issue presented is whether Murray's good faith claim is barred by limitations as a matter of law. The statute of limitations governing this cause of action is set forth in Tex.Civ.Prac. & Rem.Code Ann. § 16.003(a) (Vernon 1986):

A person must bring suit for trespass for injury to the estate or to the property of another, conversion of personal property, taking or detaining the personal property of another, personal injury, forcible entry and detainer, and forcible detainer not later than two years after the day the cause of action accrues.

Thus, we must determine the date Murray's cause of action accrued. The parties dispute whether this should be the date coverage was denied (September 5, 1984) or

---

1. "Good faith" is occasionally used in this opinion to encompass the tort duty of good faith and fair dealing.

the date SJA admitted its denial was unwarranted (March 15, 1985).

In *Arnold*, we recognized the duty of an insurer to deal fairly and in good faith with its insured in the processing and payment of claims and that breach of that duty is compensable in tort. 725 S.W.2d at 167; *see also Aranda v. Insurance Co. of N. America*, 748 S.W.2d 210, 212 (Tex.1988); *Chitsey v. National Lloyds Ins. Co.*, 738 S.W.2d 641, 643 (Tex.1987). We further held that limitations on a good faith claim does not begin to run until the underlying contract claims are finally resolved. *Arnold*, 725 S.W.2d at 168; *see also Street v. Second Court of Appeals*, 756 S.W.2d 299, 302 (Tex.1988).

Murray contends that her underlying contract claims were not "finally resolved," and limitations did not begin to run, until SJA admitted on March 15, 1985, that its September 5, 1984 denial of coverage was unwarranted. This argument must fail. SJA voluntarily admitted that it had made a mistake in denying coverage. Under this theory, if SJA had never admitted coverage, the contract claim would never have been "finally resolved," and limitations would never have begun to run. Such a result was not intended in *Arnold*.

 Limitations statutes afford plaintiffs what the legislature deems a reasonable time to present their claims and protect defendants and the courts from having to deal with cases in which the search for truth may be seriously impaired by the loss of evidence, whether by death or disappearance of witnesses, fading memories, disappearance of documents or otherwise. The purpose of a statute of limitations is to establish a point of repose and to terminate stale claims. *Safeway Stores, Inc. v. Certainteed Corp.*, 710 S.W.2d 544, 545–546 (Tex.1986); *see also Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348 (Tex.1990); *United States v. Kubrick*, 444 U.S. 111, 117, 100 S.Ct. 352, 356, 62 L.Ed.2d 259 (1979).

 We hold that Murray's good faith claim accrued and limitations commenced on the day SJA wrongfully denied coverage (September 5, 1984). This holding comports with well-established precedent and other authorities. *See, e.g.,* S. Ashley, *Bad Faith Liability: A State–By–State Review* § 4.05 (1987) (one would expect that in a first party case the insured's bad faith "cause of action accrues the moment an insurer should pay a claim but fails to do so. At that moment, the insurer's wrongful conduct first causes harm to the insured.").

For the purposes of application of statute of limitations, a cause of action generally accrues at the time when facts come into existence which authorize a claimant to seek a judicial remedy. *Robinson v. Weaver*, 550 S.W.2d 18, 19 (Tex.1977). Put another way, "a cause of action can generally be said to accrue when the wrongful act effects an injury." *Moreno*, 787 S.W.2d at 351. Murray was unable to obtain much-needed medical attention because of SJA's September 5, 1984 denial and had sufficient facts that day to assert her good faith claim. *See Arnold*, 725 S.W.2d at 167 ("A cause of action for breach of the duty of good faith and fair dealing is stated when it is alleged that there is no reasonable basis for denial of a claim ...").

The fact that damage may continue to occur for an extended period after denial does not prevent limitations from starting to run. Limitations commences when the wrongful act occurs resulting in some damage to the plaintiff. *Atkins v. Crosland*, 417 S.W.2d 150, 153 (Tex.1967); *First Nat. Bank v. Nu–Way Transports, Inc.*, 585 S.W.2d 813, 816 (Tex.Civ.App.—Fort Worth 1979, writ ref'd n.r.e.).

When, as SJA has done, an insurance company denies a claim, other jurisdictions have decided that the good faith cause of action accrues on the date of denial.[2] *See,*

---

2. When, unlike this case, there is no outright denial of a claim, the exact date of accrual of a cause of action becomes more difficult to ascertain and should be a question of fact to be determined on a case-by-case basis. *See Safeco*

*Ins. Co. of America v. Sims*, 435 So.2d 1219, 1222 (Ala.1983). Clearly, though, if an insurance company strings an insured along without denying or paying a claim, limitations will be tolled.

e.g., *Frazier v. Metropolitan Life Ins. Co.,* 169 Cal.App.3d 90, 103, 214 Cal Rptr. 883, 890 (1985); *Safeco Ins. Co. of America v. Sims,* 435 So.2d 1219, 1222 (Ala.1983). The Alabama Supreme Court, in *Farmers & Merchants Bank v. Home Ins. Co.,* 514 So.2d 825, 831–832 (Ala.1987), determined that a cause of action for bad faith refusal to pay insurance benefits accrues when the insured has actual knowledge of facts which would put a reasonable mind on notice of the possible existence of bad faith. The court, however, went on to decide that, as a matter of law, the bad faith cause of action in that case accrued on the date insurance coverage was denied. *Id.; see also Alfa Mut. Ins. Co. v. Smith,* 540 So.2d 691, 692–93 (Ala.1988).

### Modification of Arnold

■ Our decision today modifies the limitations holding in *Arnold* because in retrospect it cannot withstand critical scrutiny. In *Arnold,* a motorcyclist, Arnold, was injured in an accident involving an uninsured driver. Arnold was insured by National County Mutual under a policy that included "uninsured motorist" protection up to $10,000. Although no specific date is known, denial of coverage occurred no later than June 1974, because in that month, Arnold sued both National County and the uninsured motorist. Evidence before the trial court showed that National County was relying on the opinion of an inexperienced lawyer and did not conduct an investigation to determine the merits of the claim. Arnold obtained a favorable judgment in excess of the policy limit in December 1977. One year later, in December 1978, Arnold filed his good faith claim against National County. This was over four years after denial. We held, nevertheless, that the two year statute of limitations did not bar this claim. Because Arnold had filed the initial or "underlying" suit to determine coverage, we analogized to *Linkenhoger v. American Fidelity & Casualty Co.,* 152 Tex. 534, 260 S.W.2d 884 (Tex.1953), *overruled in part on other grounds in Street,*

756 S.W.2d at 301, *and in Hernandez v. Great American Ins. Co.,* 464 S.W.2d 91, 95 (Tex.1971), to determine that limitations did not run until Arnold's underlying contract claims were finally resolved. Arnold's contract claim was resolved with a favorable judgment in December 1977. His good faith claim, filed one year later, was therefore held to be timely.

Our limitations holding in *Arnold* is not consistent with the rule that limitations commences at the time facts come into existence which authorize a claimant to seek a judicial remedy. *Robinson,* 550 S.W.2d at 19; *Moreno,* 787 S.W.2d at 357; *Linkenhoger,* 260 S.W.2d at 886. In *Arnold,* it is not clear when the facts indicating a breach of the duty of good faith and fair dealing came to light. In the instant case, however, the insured had sufficient facts to seek a judicial remedy on the date that coverage was denied.

Moreover, *Arnold* incorrectly analogized to the reasoning used in *Linkenhoger,* which was a *Stowers* case.[3] The injury producing event in a *Stowers* third party case is not the same as it is in a first party case. A *Stowers* third party claim accrues when the insurer unreasonably fails to settle a claim against the insured within policy limits. The injury producing event is the underlying judgment in excess of policy limits. *Linkenhoger,* 260 S.W.2d at 887. A first party claim, such as *Arnold* and this case, accrues when an insurer unreasonably fails to pay an insured under the policy. The injury producing event is the denial of coverage. *See* Note, *Arnold v. National County Mutual Fire Ins. Co.: Texas Adopts First–Party Bad Faith,* 39 Baylor L.Rev. 835, 853–854 (1987). Limitations on a first party claim appropriately begins to run at denial, not the date a separate suit to determine coverage under the contract is resolved.

### Expiration of Limitations

■ Whether Murray's claim is barred under the facts of this case depends on

---

3. *G.A. Stowers Furniture Co. v. American Indemnity Co.,* 15 S.W.2d 544 (Tex.Comm'n App.1929, holding approved) (action by an insured against automobile indemnity insurer based on failure to accept reasonable settlement offer when defending action against insured).

whether she interrupted the running of limitations. Murray filed her original petition on March 27, 1986, well within the two-year limitations period. Mere filing of suit, however, will not interrupt the running of limitations unless due diligence is exercised in the issuance and service of citation. *Rigo Mfg. Co. v. Thomas,* 458 S.W.2d 180, 182 (Tex.1970). Citation was first issued and returned unserved in September 1986. Citation was issued a second time and successfully served on January 21, 1987, outside the limitations period. The court of appeals held that, as a matter of law, Murray did not exercise due diligence. We disagree with the court of appeals.

■ When a defendant (SJA) has affirmatively pleaded the defense of limitations, and when failure to timely serve the defendant has been shown, the burden shifts to the plaintiff (Murray) to explain the delay. *See Liles v. Phillips,* 677 S.W.2d 802, 809 (Tex.App.—Fort Worth 1984, writ ref'd n.r. e.); *Williams v. Houston–Citizens Bank & Trust Co.,* 531 S.W.2d 434, 436 (Tex.Civ. App.—Houston [14th Dist.] 1975, writ ref'd n.r.e.).

■ It is reasonable to assume that Murray, relying on *Arnold,* concluded that her cause of action accrued on the date SJA admitted its denial was unwarranted (March 15, 1985); thus, she could have believed that even if there was no diligence and limitations was not interrupted until the date of service (January 21, 1987), her claim would be timely. In preparing her response to the motion for summary judgment, Murray could have relied on this interpretation of *Arnold* and thus would not have felt compelled to argue diligence in the service of process.

Our decision today, however, modifies *Arnold* so that limitations on Murray's good faith claim commenced on the day SJA denied coverage. Her claim is therefore barred unless she exercised diligence in serving citation. Since we have modified the law, we will remand this case in the interest of justice to the trial court. Tex.R. App.P. 180; *see also L.M.B. Corp. v. Gurecky,* 501 S.W.2d 300, 303 (Tex.1973).

This will give Murray an opportunity to show diligence in serving citation and if successful, to assert her good faith claim. *See Texas Real Estate Comm'n v. Nagle,* 767 S.W.2d 691, 695 (Tex.1989).

For the reasons stated, the judgment of the court of appeals is reversed and this cause is remanded to the trial court.

SPEARS, J., files a dissenting opinion, joined by RAY, MAUZY and DOGGETT, JJ.

SPEARS, Justice, dissenting.

I respectfully dissent. In *Arnold v. National County Mutual Fire Ins. Co.,* 725 S.W.2d 165 (Tex.1987), this court considered the same question as is presented here and held "that the statute of limitations does not begin to run on a good faith and fair dealing claim until the underlying insurance contract claims are finally resolved." 725 S.W.2d at 168. This is binding precedent and I would continue to adhere to it.

In reaching our decision in *Arnold,* we analogized to *Linkenhoger v. American Fidelity & Casualty Co.,* 152 Tex. 534, 260 S.W.2d 884 (1953), where we held in a *Stowers* suit that limitations did not begin to run until the underlying judgment was final. The court now views this as an "incorrect" analogy and implies that the court simply made a mistake by failing to recognize the difference between a third-party claim such as *Linkenhoger* and a first-party claim such as was involved in *Arnold.* However, it is clear that the court did not simply make a mistake; we expressly recognized that the running of limitations in *Arnold* should be the same "as in *Stowers* cases." 725 S.W.2d at 168. Thus, *Arnold* ruled on the exact question now before the court and rejected the very argument that the court now chooses to adopt.

The court not only overrules *Arnold* but also overrules implicitly the even more recent decision of *Street v. Second Court of Appeals,* 756 S.W.2d 299 (Tex.1988). In *Street,* we reconsidered *Linkenhoger* to hold that, when a trial court renders final

judgment on a third-party's contract claim, the insured may immediately bring a *Stowers* action even though the insured's appeal from the excess judgment is still pending. Nevertheless, *Street* reaffirmed that part of *Linkenhoger* which held that limitations will not begin to run on the insured's bad faith claim until all appeals have been exhausted and "until the underlying action has been completely resolved." 756 S.W.2d at 302. Thus, for purposes of limitations, *Street* effectively rejected any rigid application of the injury based rule of accrual and instead adopted a practical approach similar to the one announced in *Arnold*. An insured *may* bring a *Stowers* action upon the occurrence of the "injury-producing event"—i.e., the final trial court judgment exceeding policy limits—but "an insured who so wishes may still wait" and limitations will *not* begin to run on the action until the underlying claim is *completely* resolved. *Id.*

Rather than continuing with this practical approach for bad-faith causes of action, the court blindly adheres to a strict injury based rule of accrual as though there were no exceptions. In doing so, it cites *Robinson v. Weaver,* 550 S.W.2d 18 (Tex.1977) for the proposition that a cause of action accrues when facts that authorize a claimant to seek a judicial remedy first come into existence. While this is certainly a fair statement of the *general* rule, there are exceptions, and *Robinson* itself discussed one such exception—the discovery rule. 550 S.W.2d at 20. Under this exception, a cause of action does not accrue at the time an injury comes into existence, but rather at the time the claimant discovers or, in the exercise of reasonable diligence, should have discovered the facts giving rise to the cause of action. *See Willis v. Maverick,* 760 S.W.2d 642 (Tex.1988); *Gaddis v. Smith,* 417 S.W.2d 577 (Tex.1967). Fraudulent concealment gives rise to another such practical exception to the injury based rule of accrual. *See Borderlon v. Peck,* 661 S.W.2d 907 (Tex.1983); *see also Christian v. American Home Assurance Co.,* 577 P.2d 899 (Okla.1977) (Based on allegation that insurer had fraudulently concealed its bad faith, court allowed plaintiff to try bad faith claim after contract claim was already litigated.). Thus, the injury based rule of accrual is a *general* rule, not an absolute. Moreover, the *Robinson* decision itself was limited to medical misdiagnosis cases. In a subsequent medical malpractice case, we expressly recognized that *Robinson* was so limited and refused to strictly adhere to the injury based rule of accrual. *Nelson v. Krusen,* 678 S.W.2d 918, 923 (Tex.1984). Thus, *Robinson* is not controlling even in all medical cases much less in other areas such as insurance bad faith litigation.

In explaining our holding in *Street,* we analogized to *Arnold* and reasoned that "[n]o valid public policy is served by forcing an insured to bring an action which may ultimately prove unnecessary." 756 S.W.2d at 302. We implicitly recognized that it is unjust to require an insured to pursue a *Stowers* action before he can determine whether there is any basis or necessity for doing so. Similarly, in first-party bad faith claims, it is unjust to require the insured to pursue a cause of action before he can determine whether there is any basis or necessity for doing so.

Limitations should begin to run when the insured's underlying contract claim is finally resolved rather than when the claim is initially wrongfully denied. Both *Arnold* and *Street* mandate this result, and it is a result that comports with common sense. It is not the mere denial of a claim that gives rise to a bad faith cause of action; it must be a denial without a reasonable basis. *Arnold,* 725 S.W.2d at 167. Often, the evidence suggestive of bad faith settlement practices will not surface until discovery is complete or trial has begun. *See, e.g., Chavers v. National Security Fire & Casualty Co.,* 456 So.2d 293 (Ala.1984) (During trial of contract claim, plaintiff learned that sole basis for insurer's denial of claim was uncorroborated hearsay statement of a convicted felon.); *Christian v. American Home Assurance Co.,* 577 P.2d 899 (Okla.1977) (Plaintiff did not discover insurer's bad faith until contract claim was submitted to jury.). By setting the denial date as the date a cause of action accrues,

the court requires insureds to file lawsuits before they may even know of the facts giving rise to a cause of action.

By forcing the insured to bring his bad faith action at the time a claim is denied, the court presents the insured with a dilemma. On the one hand, if an insured does not bring his bad faith claim within two years of the date of denial, he will face a limitations bar to his claim regardless of whether he had any real basis for ascertaining bad faith within that time period. On the other hand, if an insured brings the bad faith claim immediately in order to avoid the limitations bar, he has in effect been forced to bring a claim that may later prove unnecessary. This result conflicts with our decision in *Street* and will result in a proliferation of premature bad faith lawsuits as insureds attempt to avoid the possibility of a limitations bar. It will impede the expeditious settlement of contract claims because plaintiffs will now automatically assert a bad faith claim regardless of whether there are any facts to indicate that the denial was without some reasonable basis.

This is a bad result even when it is clear on the date of denial that the insurer acted in bad faith. Both the insured and the insurer will face a protracted pretrial discovery dispute on the bad faith claim. Courts may allow broader discovery when the bad faith claim is joined with the contract claim. *See, e.g., Lunsford v. Morris,* 746 S.W.2d 471 (Tex.1988) (with a tort claim that seeks punitive damages, court may allow discovery of defendant's net worth). This discovery phase will delay the resolution of the insured's underlying contract claim, and this delay will then bring about the very economic hardship that the insured sought to avoid by purchase of the policy.

On what powerfully persuasive authority does the majority rely as justification for its decision to reject the rule of *stare decisis* and to break with prior precedent? The only bad faith cases it cites are three cases from the Alabama Supreme Court and one case from a California appeals court. In addition, the majority cites to the book *Bad Faith Liability* in which author Stephen Ashley stated that "one would expect" an insured's bad-faith cause of action to accrue "the moment an insurer should pay a claim but fails to do so." S. Ashley, *Bad Faith Liability* § 4.05 at 148 (1987). However, Ashley made clear that this statement represented nothing more than his own expectation because in the immediately preceding sentence he said: "There are *no* cases clearly raising the issue of when a cause of action for bad faith accrues in a first-party case." *Id.* at 147–148. Perhaps Stephen Ashley would have expected the result the majority now reaches but it is not what this court held in *Arnold.* Surely this court's own precedent should carry more weight than one commentator's "expectation."

As for the cases in other jurisdictions, they are either distinguishable or inapposite. *Frazier v. Metropolitan Life Ins. Co.,* 169 Cal.App.3d 90, 214 Cal.Rptr. 883 (1985) involved the construction of a time limitations provision contained *within an insurance policy; Frazier* did not address the running of limitations on a common-law bad faith cause of action. The Alabama cases merely hold that a bad faith cause of action accrues when the insured gains knowledge of facts which would reasonably lead him to discover the bad faith, and that this is a question of fact in each case. *Farmers and Merchants Bank v. Home Ins. Co.,* 514 So.2d 825, 831–832 (Ala.1987); *Safeco Ins. Co. of America v. Sims,* 435 So.2d 1219, 1222 (Ala.1983); *see also Alfa Mut. Ins. Co. v. Smith,* 540 So.2d 691 (Ala. 1988). As already noted, an insured often will not gain this knowledge until long after the claim has been denied.

The rule of stare decisis is not inviolable. *See, e.g., Sanchez v. Schindler,* 651 S.W.2d 249 (Tex.1983). However, when confronted with nothing more than the "expectation" of one commentator and a few inapposite decisions from other jurisdictions, I would choose to adhere to stare decisis and to follow this court's precedent of only three years past. *See Hill v. Mobile Auto Trim, Inc.,* 725 S.W.2d 168, 175 (Tex.1987) (Gonzalez, J., dissenting) (criticizing court for refusal to follow precedent); *see also Mag-*

*ro v. Ragsdale Bros., Inc.,* 721 S.W.2d 832, 838 (Tex.1986) (Gonzalez, J., dissenting).

In accordance with *Arnold,* I would hold that Murray's bad faith cause of action did not accure until the underlying contract claim was "finally resolved." Murray's contract claim was not "finally resolved" until San Jacinto Agency acknowledged coverage on March 15, 1985. Therefore, Murray was still within the two-year limitations period on January 21, 1987 when service of citation was made on San Jacinto Agency. Murray's claim is not barred by limitations. I would reverse the judgment of the court of appeals and remand the cause to the trial court for trial on the merits of Murray's cause of action.

RAY, MAUZY and DOGGETT, JJ., join in this dissent.