ALL–TEX ROOFING, INC., Appellant,

v.

GREENWOOD INSURANCE GROUP,
INC and M.D. Jensvold & Co.,
Inc., Appellees.

No. 01–01–00450–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

March 7, 2002.

Lennon C. Wright, Alice Oliver–Parrott, Houston, for Appellant.

Stephen P. Carrigan, Andrew T. McKinney, IV, Suzanna Caroline Bonham, Kim A. Cooper, Houston, for Appellees.

Panel consists of Justices COHEN, NUCHIA, and PRICE.*

## OPINION

MURRY B. COHEN, Justice.

Appellant, All–Tex Roofing, Inc., sued appellees, Greenwood Insurance Group, Inc. and M.D. Jensvold and Company, Inc.,

---

* The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas at Houston, sitting by assignment.

for negligence and violation of the Deceptive Trade Practices Act (DTPA),[1] claiming they placed All–Tex's liability insurance with an insolvent insurer. The trial judge granted a take-nothing summary judgment in favor of appellees. We reverse and remand.

## Facts

In late 1995, All–Tex contacted Greenwood to purchase $2 million of general liability insurance. Greenwood wrote a policy for $1 million and asked Jensvold, a broker, to procure another $1 million of coverage. Jensvold obtained such a policy issued by Resure, Inc., a member of the Illinois Insurance Exchange. On March 5, 1997, Jensvold learned that Resure was insolvent and so informed Greenwood the following day. Greenwood informed All–Tex on March 6 that Resure was insolvent and that the Resure policy would be cancelled effective March 27. Greenwood's letter to All–Tex stated, "The Illinois Exchange Guaranty Fund will provide up to $300,000 per claimant on any claims which may have occurred under Resure's policies."

On March 27, 1997, All–Tex answered a personal injury suit in Harris County, *Brauilio Guillen v. All–Tex Roofing, Inc., et. al.,* cause no. 97–09453 in the 61st District Court. On March 26, 1999, judgment was entered in that suit against All Tex for $1.3 million. All–Tex then sought indemnity for $300,000 from the Illinois Insurance Guaranty Fund (the "Illinois Fund"). On July 23, 1999, that fund responded that the claim was excluded under the policy and refused All–Tex's claim. All–Tex had already sued appellees on June 2, 1999.

■ Appellees moved for a rule 166a(c) summary judgment on two grounds. First, they contended All–Tex's claims were brought more than two years after its claims for negligence and deceptive trade practice had accrued and thus were barred by the two-year statute of limitation. Tex. Civ. Prac. & Rem.Code Ann. § 16.003(a) (Vernon 1986) (negligence); Tex. Bus. & Com.Code Ann. § 17.565 (Vernon 1987) (DTPA). Second, appellees contended that All–Tex suffered no damages from losing its liability coverage, including the $300,000 the Illinois Fund could have supplied, because Guillen's claim was excluded under the policy. The trial judge granted summary judgment without stating any grounds; thus, we will affirm the judgment if it is good under any ground in appellees' motion. *See State Farm Fire & Cas. Co. v. S.S.,* 858 S.W.2d 374, 380 (Tex. 1993).

As the movant, appellees had the burden to prove conclusively, as a matter of law, their affirmative defense of limitations or their assertion that the *Guillen* claim was excluded under the policy. *See American Tobacco, Co., Inc. v. Grinnell,* 951 S.W.2d 420, 425 (Tex.1997). We will take all of All–Tex's evidence as true and grant all reasonable inferences from the record in favor of All–Tex. *Id.* All doubts will be resolved against appellees. *Id.*

## When Does a Cause of Action Accrue?

■ A cause of action generally accrues, and the statute of limitations begins to run, when facts come into existence that authorize a claimant to seek a judicial remedy. *Johnson & Higgins of Texas v. Kenneco Energy, Inc.,* 962 S.W.2d 507, 514 (Tex.1998); *Murray v. San Jacinto Agency, Inc.,* 800 S.W.2d 826, 828 (Tex.1990). A cause of action generally accrues when the wrongful act *effects an injury.* *Moreno v. Sterling Drug, Inc.,* 787 S.W.2d 348, 351 (Tex.1990). Thus, in *Kenneco,* a suit

---

1. Tex. Bus. & Com.Code Ann. § 17.565 (Vernon 1987).

by an insured against its agent for negligent breach of the agent's duty to obtain insurance, the Supreme Court held that Kenneco sustained injury when coverage was denied "and *therefore, limitations commenced on that date because all facts required for a cause of action existed at that time." Johnson & Higgins*, 962 S.W.2d at 514 (emphasis supplied). Conversely, denial of coverage would not cause limitations to commence unless all facts required for a cause of action existed at that time, the wrongful denial of coverage effected an injury, and facts existing when coverage was denied authorized the claimant to seek a judicial remedy. "One would expect that in a first party case, the insured's bad faith cause of action accrues *the moment an insurer should pay a claim but fails to do so.* At that moment, the insurer's wrongful conduct first causes harm to the insured." *Murray*, 800 S.W.2d at 828 (emphasis supplied). "Limitations commences when the wrongful act occurs resulting in some damage to the plaintiff." *Id.* "When ... there is no outright denial of a claim, the exact date of accrual of a cause of action becomes more difficult to ascertain and should be a question of fact to be determined on a case-by-case basis." *Id.*

These principles of law govern this case, but they call for a different result from that in *Johnson & Higgins* and *Murray* because the facts here are different.

### When Did Greenwood's Alleged Negligence Authorize All–Tex to Seek a Judicial Remedy?

■ Greenwood asserts that All–Tex suffered damage authorizing a judicial remedy either on March 6, 1997, when All–Tex learned of Resure's insolvency, or on March 27, 1997, when Resure's policy was cancelled and All–Tex learned its coverage would not exceed $300,000. Appellees claim

Resure's insolvency caused three specific injuries authorizing a judicial remedy for All–Tex: (1) the loss of $700,000 in liability coverage; (2) the loss of premiums paid in advance for the remaining two months of the policy period; and (3) the loss of coverage under the policy for defense costs of the *Guillen* lawsuit. We conclude that appellees did not conclusively prove that any of these events authorized All–Tex to seek a legal remedy.

The loss of $700,000 in liability coverage did not authorize All–Tex to seek a remedy before the day it suffered a judgment in the *Guillen* suit. Until then, All–Tex had not made a claim for indemnity, and nobody had denied one. As the Supreme Court stated in *Murray*, a cause of action accrues the moment an insured should pay a claim but fails to do so. *Murray*, 800 S.W.2d at 828. There was no claim for Resure or the Illinois Fund to pay in March 1997, and there was none until March 26, 1999. All–Tex sued soon after on June 2, 1999.

The facts in both *Johnson & Higgins* and *Murray* support this conclusion. As the *Johnson & Higgins* court stated, limitations commenced on the day coverage was denied "because all facts required for a cause of action existed at that time." 962 S.W.2d at 514. In *Johnson & Higgins*, as the Supreme Court related in detail, the insured, Kenneco, not only had suffered an injury (the loss of its profitable contract) and knew its amount ($1,690,780), but had submitted a claim for that lost profit and had it refused by its insurers. *Id.* at 512–13. In other words, Kenneco's loss, its demand for payment, and its insurer's refusal to pay all occurred *before* limitations began to run.

This case is different. All–Tex did not make, and could not have made, a demand in March 1997 for payment of any amount under its indemnity coverage because All–

Tex was not then liable to anybody for anything. There was at that time no amount of money, known or unknown, for All–Tex to demand of its insurer under the indemnity clause and nothing for the insurer to refuse.[2] If All–Tex had sued with no more evidence of loss than that, its case would have been vulnerable to a summary judgment motion asserting no evidence of damages, and its attorneys may have provoked a motion for sanctions for filing a frivolous suit. *See* TEX.R. CIV. P. 13, 166a(i).

The facts in *Murray v. San Jacinto Agency* are similar. In *Murray,* as in *Johnson & Higgins,* the insured suffered a loss, demanded payment, and was denied coverage *before* she filed suit. 800 S.W.2d at 828. Under those circumstances, the denial of coverage started the running of the limitations. *Id.* Murray got sick, sought coverage for treatment of her illness under her health insurance policy, was denied coverage, and was consequently unable to get medical care. *Id.* at 827. Thus, the Supreme Court concluded, "Murray was unable to obtain much needed medical attention because of SJA's September 5, 1984 denial and had sufficient facts that day to assert her good faith claim." *Id.* at 828. The Supreme Court stated, "A first party claim, such as … this case, accrues when an insurer unreasonably fails to pay an insured under the policy. The injury producing event is the denial of coverage." *Id.* at 829. But, the Court added, "When … there is no outright denial of a claim, the exact date of accrual of a cause of action becomes more difficult to ascertain and should be a question of fact to be decided on a case-by-case basis." *Id.* at 829 n. 2. (emphasis added).

Here, All–Tex sued appellees in June 1999, a month *before* there was an outright denial of the claim by the Illinois Fund.

Neither Resure nor the Illinois Fund unreasonably failed to pay All–Tex indemnity for liability in March of 1997. They did not fail to pay at all. There was nothing for them to pay. There was nothing then for All–Tex to claim under the policy's indemnity clause. Rather than denying coverage, the Illinois Fund accepted coverage, but imposed a $300,000 cap for claims covered by the policy. For All–Tex's loss of $700,000 of coverage, we conclude that the statute of limitations did not begin to run in March 1997 and instead began to run no sooner than March 26, 1999.[3]

Appellees next contend that All–Tex suffered damage in March 1997 because it had paid its premiums for $1 million of coverage in advance through the end of the policy year in May 1997 and, therefore, knew that it had lost 70% of the value of that premium for the next two months. Because this loss existed on March 27, 1997 and was attributable to appellees' alleged negligence, appellees contend this loss started the running of limitations. This argument may have merit in some other case, but it does not in this one. Evidence shows that in November 1998, which was within two years of March 1997, All–Tex was refunded its premiums for the last two months of the cancelled policy's period. Because All–Tex was compensated for this loss within two years, it had no reason to sue for the loss.

Third, appellees contend that All–Tex knew on March 27, 1997 that it had suffered an injury authorizing a judicial reme-

---

**2.** This fact distinguishes this case from *Abe's Colony Club v. C. & W. Underwriters,* 852 S.W.2d 86 (Tex.App.-Fort Worth 1993, writ denied), on which appellees rely.

**3.** We need not decide whether limitations commenced even later, when the Illinois fund denied coverage on July 23, 1999, because All–Tex sued before that happened.

dy, namely, the loss of Resure's promise under the policy to pay for defense costs. Again, the record does not show that All–Tex suffered a loss. The record contains bills sent to All–Tex by its lawyer in the *Guillen* suit. The record does not show, however, that All–Tex ever claimed and was denied reimbursement for these costs by Resure or by the Illinois Fund. This may be because All–Tex's defense costs were paid by Greenwood under its $1 million insurance policy. In addition, the record contains a letter from All–Tex's lawyer to the Illinois Fund receiver, stating:

> It is my further understanding that the Guaranty Fund will not provide any up-front expenses for defense of now pending litigation and that such if paid by an insured affected by this liquidation that it would be eligible for reimbursement from the Fund. Please clarify if the $300,000 is the total for the claim or an aggregate total of loss in defense cost.

This letter suggests the Illinois Fund agreed to pay defense costs at the end of the litigation, not during it. In any event, appellees have not proved as a matter of law that All–Tex had to pay defense costs itself or that All–Tex ever asked anyone else to do so and was denied.

We conclude that *Johnson & Higgins* is distinguishable because the insured's loss—the loss of the profitable contract for sale of oil, the very loss insured against under the contract—occurred before the insured was denied coverage. Here, the loss insured against—a judgment for tort liability—did not occur until March 26, 1999, long after March 27, 1997, the day $700,000 of coverage was lost to insolvency.

We hold that appellees did not show as a matter of law that the claim was barred by

limitations. Consequently, All–Tex's first issue is sustained.

## Was Guillen's Claim Excluded Under the Resure Policy?

■ Appellees moved for summary judgment on the additional ground that All–Tex was not damaged because Guillen's claim was not covered by the policy. Appellees contend Guillen was All–Tex's employee, and employees are excluded under the policy.

The policy provided:

> This insurance does not apply to:
>
> e. EMPLOYER'S LIABILITY
> "bodily injury" to: (1) an "employee" of the insured arising out and in the course of: (a) employment by the insured; or (b) performing duties related to the conduct of the insured's business; . . . .

We do not agree that Guillen's claim was excluded by this language. All–Tex was in the roofing business. It had contracted for this particular job and then subcontracted with a Mr. Gutierrez to provide laborers. The laborers Guitierrez provided were employees leased to Gutierrez by an employee-leasing company known as Employers Edge. Guillen was never hired by All–Tex, and All–Tex had no contract with Employers Edge. The insurance policy did not define the word "employee," but it did provide that the term "employee" included a "leased worker," and the term "leased worker" was defined as "a person leased to you [All–Tex] by a labor leasing firm under an agreement between you [All–Tex] and the labor leasing firm to perform duties related to the conduct of your business." Guillen was not a leased worker under this definition because he was not a person leased to All–Tex by a labor-leasing firm.[4]

4. Evidence shows that All–Tex used leased     employees to do all of its roofing work so that

To reach its conclusion that Guillen was All–Tex's employee, appellees rely on the jury's findings in Guillen's suit against All–Tex and the text of Texas Labor Code Section 406.124. In Guillen's suit against All–Tex, the jury found that both All–Tex and Guillen were negligent and that All–Tex's negligence was 55% responsible for Guillen's injury, while Guillen's negligence was 45% responsible. The jury also answered as follows:

> Did All–Tex Roofing, Inc. subcontract the work to Luis Gutierrez with the intent of avoiding liability under its Texas Workers Compensation Policy?
>
> Answer: Yes.

Guillen then filed in the underlying lawsuit a motion to disregard the jury's findings that he was negligent and 45% responsible for his injuries. This was based on Texas Labor Code section 406.124, which provides:

> If a person who has workers' compensation insurance coverage subcontracts all or part of the work to be performed by the person to a subcontractor with the intent to avoid liability as an employer under this subtitle, an employee of the subcontractor who sustains a compensable injury in the course and scope of the employment shall be treated as an employee of the person for the purposes of workers compensation and shall have a separate right of action against the subcontractor. The right of action against the subcontractor does not affect the employee's right to compensation under this subtitle.

Tex. Lab.Code Ann. § 406.124 (Vernon 1996).

In his motion to disregard, Guillen sought the following relief:

> In answer to question 4, the jury answered that All–Tex Roofing, Inc. subcontracted the work in question with the intent to avoid liability under its workers compensation policy. Consequently, by the authority of the Texas Labor Code, All–Tex Roofing, Inc. is treated as a nonsubscriber, and negligence is no defense ... By virtue of the fact that All–Tex Roofing, Inc. is to be treated as a nonsubscriber, the negligence finding as to Braulio Guillen in question 7 is of no force and effect, therefore rendering the jury's answer to question 8 regarding apportionment as moot.

The trial court granted Guillen's motion, disregarded the jury's answers to questions seven and eight and, consequently, Guillen's contributory negligence, and specifically stated in its order thereon that All–Tex Roofing would be regarded "as a nonsubscriber to the Workers Compensation Act."

Appellees now contend:

> By filing a motion to disregard and requesting that the trial court treat Guillen "as an employee" of All–Tex in accordance with Sec. 406.124 of the Labor Code, Guillen effectively negated any coverage through the Resure policy.... The court's order designating All–Tex as a "nonsubscriber" can only mean one thing: All–Tex was Guillen's employer and, because it failed to obtain workers compensation insurance for him, it waived its common law defenses. Any other interpretation would render the trial court's ruling completely immaterial as a matter of law.... Moreover, the

it did not have to pay the high premiums charged for workers compensation insurance

on employees who repair roofs.

trial court had no discretion or legal authority to disregard Guillen's contributory negligence unless it necessarily found that Guillen was an employee.

We disagree. First, appellees cite no authority for this application of the statute. Second, the statute provides that a person in Guillen's position "shall be treated as an employee of [All–Tex] for purposes of workers compensation...." TEX. LAB.CODE ANN. § 406.124. How Guillen is "treated" for purposes of the workers compensation statute may be determinative in deciding Guillen's rights against All–Tex under that statutory scheme, but we doubt that statutory "treatment" was meant to dispose as a matter of law of All–Tex's private contract rights against third parties, such as its insurers. Appellees contend that Guillen's above-quoted motion, asking to be treated as All–Tex's employee under section 406.124, "effectively negated any coverage through the Resure policy." Guillen, a complete stranger to any contractual relations between All–Tex and Resure, could not have negated as a matter of law All–Tex's rights under a contract he never joined.

## What Is the Effect of the Illinois Receiver's Decision To Deny Coverage Based on the Employee Exclusion?

■ The Illinois receiver denied to All–Tex coverage from Guillen's claim, stating:

> The insured's policy contains an exclusion for bodily injury to an employee arising out of and in the course of employment by the insured and performing duties related to the conduct of the insured's business. As this was a work-related injury, we must respectfully deny your claim for no liability.

■ Appellees do not say that this conclusion by the Illinois receiver controls our decision, but they contend it "should not be overlooked." We believe it should be. "It is emphatically the province and the duty of the [Texas] judicial department to say what the law is." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177, 2 L.Ed. 60 (1803).

## Is All–Tex Estopped to Deny That Guillen Was an Employee?

■ Appellees contend that collateral estoppel prevents All–Tex from denying that Guillen was its employee.

■ Collateral estoppel requires that: (1) the fact to be litigated in the second suit was fully and fairly litigated in the first suit; (2) the fact was essential to the judgment in the first suit; and (3) the parties were cast as adversaries in the first suit. *Root v. Brodhead*, 854 S.W.2d 706, 708 (Tex.App.-Austin 1993, no writ). The first requirement was not proved as a matter of law. Whether Guillen was All–Tex's employee was not fully and fairly litigated in the first suit. No jury question, definition, or instruction appears in the charge concerning whether Guillen was an employee of All–Tex. This indicates the jury was unconcerned with that issue. Nothing indicates that Guillen was shown by admission or by evidence to have been All–Tex's employee. If Guillen had been proved to have been All–Tex's employee, there would have been no reason for him to have invoked Labor Code section 406.124 in order to have himself "treated" as one. Everything before us indicates Guillen was not All–Tex's employee, but was, instead, either Gutierrez's or Employers Edge's employee.

Appellees' summary judgment motion arguing that Guillen was an employee was based exclusively upon the exclusion for "employer's liability" found in Section I, coverage A 2e of the policy. Consequent-

ly, we express no opinion concerning the significance, if any, of the exclusion for "workers compensation and similar laws" found in the immediately proceeding exclusion d.[5]

We conclude that appellees did not prove as a matter of law that Guillen was an employee of All–Tex, thereby making his claim against All–Tex excluded by the insurance policy. We sustain All–Tex's second issue.

The judgment is reversed, and the cause is remanded.

---

**5.** "This insurance does not apply to: ... d. Any obligation of the insured under a workers compensation, disability benefits or employment compensation law or any similar law."