Affirmed and Memorandum Opinion filed June 19, 2003










Affirmed and Memorandum Opinion filed June 19, 2003.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-02-00756-CV

____________

 

ANANT
N. MAUSKAR, Appellant

 

V.

 

JOSEPH
E. HARDGROVE, Individually, and as Agent and/or Broker for GENERAL AMERICAN
LIFE INSURANCE COMPANY, GENERAL AMERICAN LIFE INSURANCE COMPANY, GOGU DAMODHAR
REDDY, Individually, and as Agent and/or Broker for NEW ENGLAND LIFE INSURANCE
COMPANY, and NEW ENGLAND LIFE INSURANCE COMPANY, Appellees

 



 

On Appeal from the
164th District Court

Harris County, Texas

Trial Court Cause
No. 2000-33777

 



 

M E M O R A N D U M   O P I N I O N








Appellant, Anant N.
Mauskar, appeals the summary judgments granted in favor of appellants, Joseph
E. Hardgrove, Individually, and as Agent and/or Broker for General American
Life Insurance Company, General American Life Insurance Company, Gogu Damodhar
Reddy, Individually, and as Agent and/or Broker for New England Life Insurance
Company, and New England Life Insurance Company, on the affirmative defense of
statute of limitations.  We affirm.  

                                                             I. 
Background

This case involves the
sale of several insurance policies issued by Security Mutual Insurance Company
of New York, General American, and New England Life to Mauskar.  In December 1982, Joseph Hardgrove sold
Mauskar a whole life policy issued by Security Mutual with a death benefit of
$750,000 and an annual premium of $21,595. 
In January 1988, Joseph Hardgrove sold Mauskar a whole life policy
issued by General American with a death benefit of $950,000 and an annual
premium of $31,085.50.  In August 1990,
and May 1992, Gogu Damodhar Reddy sold Mauskar two policiesCan ordinary life policy
with a death benefit of $600,000 and an annual premium of $21,695 and another
ordinary life policy with a death benefit of $250,000 and an annual premium of
$10,075, issued by New England Life.  

Mauskar claims he
explained to Hardgrove and Reddy that he wanted to purchase insurance policies
similar to policies he had previously purchased in India and England that were
for definite term, which, through dividends and bonuses during the life of the
policies, in addition to a return of the premiums plus interest, would pay
approximately two or three times the death benefit when he reached age 65.  Mauskar alleges Hardgrove and Reddy
represented to him that the Security Mutual, General American, and New England
Life policies met his requirements, i.e., they would pay at least two to
three times the death benefit when he reached age 65.  

On September 13, 1997,
Mauskar turned 65, but he did not cash in the policies at that time.  In his petition, Mauskar asserts that on July
9, 1998, he “started becoming aware that the insurance which had been purchased
for him offered no retirement income and payments continued as long as the
policies were in effect or until the age of 95 years.”  Mauskar cashed in the policies in 1999, but
did not receive the return he alleges to have been promised.  








On July 5, 2000, Mauskar
sued Hardgrove, Reddy, General American, and New England Life for negligent
procurement, negligent misrepresentation, fraud, and violations of the Texas
Deceptive Trade PracticesBConsumer
Protection Act (ADTPA@) and the Texas Insurance
Code, and sought an award of the Abenefit
of the bargain@
or, alternatively, rescission of the insurance policies.  In response to appellees= assertion that Mauskar=s claims were time-barred
by the statute of limitations, Mauskar asserted the discovery rule, fraudulent
concealment, continuing tort, promissory estoppel, and the existence of a
fiduciary relationship.  Each appellee
moved for summary judgment on statute of limitations.  The trial court granted all motions for
summary judgment and on June 17, 2002, entered a final judgment.[1]

                                                    II. 
Standard of Review

If the defendant moves
for summary judgment on the basis of an affirmative defense such as
limitations, it has the burden to prove conclusively all the elements of the
affirmative defense as a matter of law.  Gross
v. Kahanek, 3 S.W.3d 518, 520 (Tex. 1999); KPMG Peat Marwick v. Harrison
County Hous. Fin. Corp., 988 S.W.2d 746, 748 (Tex. 1999); Velsicol Chem
Corp. v. Winograd, 956 S.W.2d 529, 530 (Tex. 1997).  If the movant establishes that the statute of
limitations bars the action, the nonmovant must then adduce summary judgment
proof raising a fact issue in avoidance of the statute of limitations.  KPMG Peat Marwick, 988 S.W.2d at
748.  








The statute of limitations
does not begin to run until the cause of action accrues.  Houston Endowment, Inc. v. Atlantic
Richfield Co., 972 S.W.2d 156, 159 (Tex. App.CHouston
[14th Dist.] 1998, no pet.).  Generally, a
cause of action accrues when a wrongful act causes some legal injury, even if
the fact of injury is not discovered until later, and even if all resulting
damages have not yet occurred.  Murphy
v. Campbell, 964 S.W.2d 265, 270 (Tex. 1997).  When a cause of action accrues is a question
of law for the court.  Loyd v. ECO
Resources, Inc., 956 S.W.2d 110, 126 (Tex. App.CHouston [14th Dist.]
1997, no pet.); Ross v. Arkwright Mut. Ins. Co., 892 S.W.2d 119, 131
(Tex. App.CHouston
[14th Dist.] 1994, no writ).  

                            III. 
Accrual of Mauskar=s
Causes of Action

Mauskar argues his claims
did not accrue until 1999, when he cashed in his policies.  In support of this contention, Mauskar cites
a denial of insurance case decided by the First Court of Appeals.  See All-Tex Roofing, Inc. v. Greenwood
Ins. Group, Inc., 73 S.W.3d 412 (Tex. App.CHouston
[1st Dist.] 2002, pet. denied).  In that
case, All-Tex contacted Greenwood about purchasing a $2 million general
liability policy.  Id. at
414.  Greenwood wrote a $1 million policy
and asked a broker, Jensvold, to procure an additional $1 million in
coverage.  Id.  Jensvold obtained another policy from Resure,
Inc., but later learned that Resure was insolvent.  Id. 
Greenwood informed All-Tex of Resure=s
insolvency and that the policy would be cancelled effective March 27,
1997.  Id.  Greenwood explained in a letter to All-Tex
that the Illinois Exchange Guaranty Fund would provide up to $300,000 per
claimant on any claims that occurred under Resure=s
policies.  Id.  On March 27, 1997, All-Tex answered a
personal injury suit, and on March 26, 1999, a judgment was entered against
All-Tex for $1.3 million.  Id.  All-Tex sued Greenwood and Jensvold on June
2, 1999, for negligence and violations of the DTPA for placing its insurance
with an insolvent insurer.  Id.  On July 23, 1999, the Illinois Exchange
Guaranty Fund refused the $300,000 indemnity to All-Tex because the claim was
excluded under the Resure policy.  Id.  








The court of appeals
rejected Greenwood=s
argument that All-Tex suffered damages authorizing a judicial remedy on March
6, 1997, when All-Tex learned of Resure=s
insolvency or on March 27, 1997, when the Resure policy was cancelled and
All-Tex learned its coverage would not exceed $300,000.  Id. at 415.  The court explained the loss of $700,000 in
liability coverage did not authorize All-Tex to seek a remedy before the day it
suffered a judgment.  Id.  All-Tex had not made a claim for indemnity
until the judgment had been rendered against it and, therefore, no claim had
been denied; a cause of action accrues at the moment an insurer should pay a
claim but fails to do so.  Id.
(citing Murray v. San Jacinto Agency, Inc., 800 S.W.2d 826, 828 (Tex.
1990)).  Therefore, All-Tex could not
have made a demand in March 1997, for payment of any amount under its indemnity
coverage because it “was not then liable to anybody for anything.”  Id. at 415B16. 

Mauskar claims that he
similarly did not know and could not have known the full extent of his damages
until he cashed in his policies in 1999, at which point he then had a legal
remedy he could exercise against appellees. 
We disagree with this proposition. 
This is not a case involving the denial of coverage where a claim for
denial of coverage does not accrue until the denial, but, instead, Mauskar
asserts he was attempting to purchase policies with large payoffs, but was
actually sold policies with smaller than promised payoffs because of negligence
and fraud.  








As we have previously
noted, a cause of action accrues when the wrongful act causes a legal injury,
even if the fact of the injury is not discovered until later, and even if all
resulting damages have not yet occurred. 
Murphy, 964 S.W.2d at 270.[2]  Mauskar=s
claims for fraud[3]
and rescission,[4]
which have four-year statutes of limitations, would have to have accrued after
July 4, 1996; Mauskar=s
claims for negligent procurement,[5]
negligent misrepresentation,[6] and
Insurance Code[7]
and DTPA[8]
violations, which have two-year statutes of limitations, would have to have
accrued after July 4, 1998.  

Mauskar=s causes of action
accrued at the time he purchased the Security Mutual, General American, and New
England Life policies in 1982, 1988, 1990, and 1992, when Hardgrove and Reddy
allegedly falsely or negligently represented to him that the policies would pay
two to three times their face value at age 65 and he would not be required to
pay premiums beyond age 65.  See
Murphy, 964 S.W.2d at 270; Sabine Towing & Transp. Co. v. Holliday
Ins. Agency, Inc., 54 S.W.3d 57, 63 (Tex. App.CTexarkana 2001, pet.
denied) (holding that with regard to claim for negligent misrepresentation in
procurement of insurance, two-year statute of limitations expired two years
after insured first received certificate of insurance).  Moreover, the summary judgment evidence shows
that around the time Mauskar purchased the Security Mutual, General American,
and New England Life policies in 1982, 1988, 1990, and 1992, he received
written descriptions of the policies. 
Mauskar testified, however, that he did not read the policies, which
state that premiums are to be paid through the ages of 95 (Security Mutual
policy) and 98 (General American and New England Life policies), and do not
state that he would be paid two to three times the face value of the
policies.  Had Mauskar read the policies
at the time he purchased them, he would have known that the policies were not
going to meet his alleged pay-out expectations.








                                                        III. 
Discovery Rule

In the alternative,
Mauskar asserts his claims were tolled by the discovery rule and his summary
judgment evidence created fact issues regarding when his causes of action
accrued and for how long the statute of limitations was tolled.  

One exception to the
general rule for determining when a cause of action accrues is the “discovery
rule.”  S.V. v. R.V., 933 S.W.2d
1, 4 (Tex. 1996).  The discovery rule
tolls the statute until the plaintiff has knowledge of facts, which through
reasonable diligence, would lead to the discovery of the injury, rather than
discovery of the full extent of the damages. 
Cornerstone Mun. Util. Dist. v. Monsanto, 889 S.W.2d 570, 576
(Tex. App.CHouston
[14th Dist.] 1994, writ denied); Bayou Bend Towers Council of Co-Owners v.
Manhattan Constr. Co., 866 S.W.2d 740, 744 (Tex. App.CHouston [14th Dist.]
1993, writ denied).  Whether the
plaintiff knew or should have known of an injury is generally a question of
fact for the jury, unless the defendant establishes that there is no genuine
issue of material fact establishing that the plaintiff knew or should have
known of the injury.  Houston
Endowment, Inc., 972 S.W.2d at 160.  

For the discovery rule to
apply, the nature of the injury must be inherently undiscoverable and the
injury must be objectively verifiable.  HECI
Exploration Co. v. Neel, 982 S.W.2d 881, 886 (Tex. 1998).  With regard to the “inherently
undiscoverable” element, accrual of the cause of action is delayed when the
wrong and injury were unknown to the plaintiff because of the very nature of
the injury and not because of the fault of the plaintiff.  S.V., 933 S.W.2d at 7.  An injury is inherently undiscoverable if it
is by nature unlikely to be discovered within the prescribed limitations period
despite the claimant=s
due diligence.  Id.  An injury is “objectively verifiable” if the
presence of injury and the producing wrongful act cannot be disputed.  Computer Assocs. Int=l, Inc. v. Altai, Inc.,
918 S.W.2d 453, 455 (Tex. 1996); S.V., 933 S.W.2d at 6B7.  








Mauskar cannot satisfy
the “inherently undiscoverable” prong of the discovery rule.  His injury was not inherently undiscoverable
because he easily could have discovered his injury by reading the
policies.  Mauskar admitted the policies
do not state there is a guaranteed value three times the face value or that he
would not have to pay premiums beyond age 65. 
Moreover, by 1995, Mauskar started having doubts about the policies= promised payoff.  

Mauskar complains that
although he told Hardgrove and Reddy he wanted to purchase policies that would
pay two to three times their face value when cashed in, they did not explain to
him that the policies he purchased would not have the promised payoff.  Mauskar testified that he did not understand
either the terms of the policies or that the policies he purchased would not
pay two to three times their face value, and though he called and wrote to the
insurance companies to inquire about the terms of the policies, he received no
response. 

An insurance agent, however,
has no duty to explain policy terms to an insured.  Ruiz v. Government Employees Ins. Co.,
4 S.W.3d 838, 841 (Tex. App.CEl
Paso 1999, no pet.); Garrison Contractors, Inc. v. Liberty Mut. Ins. Co.,
927 S.W.2d 296, 300 (Tex. App.CEl
Paso 1996), aff=d,
966 S.W.2d 482 (Tex. 1998); Amarco Petroleum, Inc. v. Texas Pac. Indem. Co.,
889 S.W.2d 695, 699 (Tex. App.CHouston
[14th Dist.] 1994, writ denied); Heritage Manor of Blaylock Props., Inc. v.
Petersson, 677 S.W.2d 689, 691 (Tex. App.CDallas
1984, writ ref=d
n.r.e.).  Instead, an insured has a duty
to read the policy, and failing to do so, is charged with knowledge of the
policy terms and conditions.  Ruiz,
4 S.W.3d at 841; Amarco Petroleum, Inc., 889 S.W.2d at 699; Heritage
Manor of Blaylock Props., Inc., 677 S.W.2d at 691.  








Mauskar should have
discovered the terms of the policies were not as allegedly promised by reading
the policies or descriptions of the policies at the time they were issued in
1982, 1988, 1990, and 1992.  Further,
Mauskar admitted he had Adoubts@ about the policies= payoffs as early as
1995.  The discovery rule will not toll
the limitations period on Mauskar=s
causes of action to defeat the statute of limitations.  

                                           IV. 
Fraudulent Concealment

Mauskar also asserted
fraudulent concealment of his causes of action on the part of appellees.  Fraudulent concealment is an affirmative
defense to the statute of limitations.  Weaver
v. Witt, 561 S.W.2d 792, 793 (Tex. 1977); Work v. Duval, 809 S.W.2d
351, 354 (Tex. App.CHouston
[14th Dist.] 1991, no writ).  Fraudulent
concealment concerns whether, and for how long, the statute of limitations is
tolled.  Arabian Shield Dev. Co. v.
Hunt, 808 S.W.2d 577, 585 (Tex. App.CDallas
1991, writ denied).  The defense of
fraudulent concealment defers the accrual of the plaintiff=s cause of action until
he has discovered or should have discovered the fraud.  Computer Assocs. Int=l, Inc.,
918 S.W.2d at 455.  Unlike the discovery
rule, deferral in the context of fraudulent concealment resembles equitable
estoppel, precluding the defendant from relying on the statute of limitations
as an affirmative defense.  Id. at
456.  

On summary judgment, the
plaintiff has the burden to present proof raising an issue of fact on
fraudulent concealment.  Houston
Endowment, Inc., 972 S.W.2d at 163 (citing Ryland Group, Inc. v. Hood,
924 S.W.2d 120, 121 (Tex. 1996)).  To
defeat summary judgment based on fraudulent concealment, the plaintiff must
establish (1) an underlying tort, (2) the movant=s
knowledge of the tort, (3) the movant=s
use of deception to conceal the tort, and (4) the nonmovant=s reasonable reliance on
the tort.  Id.; Arabian Shield
Dev. Co., 808 S.W.2d at 584.  Mere
allegations are insufficient to establish a fact issue on fraudulent concealment
in a summary judgment proceeding.  See
Work, 809 S.W.2d at 354 (finding that bare allegation of fraudulent
concealment did not present genuine issue of material fact precluding summary
judgment).  








When a defendant has a
duty to disclose, but fraudulently conceals the existence of a cause of action,
it is estopped to rely on the affirmative defense of statute of limitations
until the party learns of or should have learned of his right of action through
the exercise of reasonable diligence.  Borderlon
v. Peck, 661 S.W.2d 907, 908 (Tex. 1983). 
The estoppel effect of fraudulent concealment ends when a party learns
of facts, conditions, or circumstances which would cause a reasonably prudent
person to make inquiry, which, if pursued, would lead to discovery of the
concealed cause of action.  Id. at
909.  Knowledge of such facts is in the
law equivalent to knowledge of the cause of action.  Id. 
The fraudulent concealment doctrine is limited to those situations in
which the defendant has a duty of disclosure. 
Patrick v. Howard, 904 S.W.2d 941, 945 (Tex. App.CAustin 1995, no
writ).  Therefore, fraudulent concealment
applies in cases such as those involving doctor-patient, attorney-client, or
fiduciary relationships.  Id.  Whether the duty of disclosure exists is a
question of law.  Id.  

Although an insurance
agent has no duty to explain policy terms to an insured,[9]
Mauskar, nonetheless, asserts he had a fiduciary or confidential relationship
with both Hardgrove and Reddy.  There are
two types of fiduciary relationships.  The first is a formal fiduciary
relationship, which arises as a matter of law, and includes the relationships
between attorney and client, principal and agent, and partners and joint
venturers.  Insurance Co. of N. Am. v.
Morris, 981 S.W.2d 667, 674 (Tex. 1998); Texas Bank & Trust Co. v.
Moore, 595 S.W.2d 502, 507 (Tex. 1980); Hoggett v. Brown, 971 S.W.2d
472, 487 (Tex. App.CHouston [14th Dist.] 1997, pet. denied); Miller-Rogaska,
Inc. v. Bank One, Tex., N.A., 931 S.W.2d 655, 663 (Tex. App.CDallas 1996, no writ).  








The second is an informal
fiduciary relationship, which may arise from “a moral, social, domestic or
purely personal relationship of trust and confidence, generally called a
confidential relationship.”  Associated
Indem. Corp. v. CAT Contracting, Inc., 964 S.W.2d 276, 287 (Tex.
1998).  To impose an informal fiduciary
duty in a business transaction, the requisite special relationship of trust and
confidence must exist prior to, and apart from, the agreement made the basis of
the suit.  Id. at 288.  

We know of no authority
imposing a fiduciary relationship as a matter of law between an insured and his
insurer or its agent; therefore, Mauskar must establish an informal fiduciary
or confidential relationship.[10]  In support of his claim of a fiduciary
relationship with Hardgrove and Reddy, Mauskar asserts he had known Hardgrove
and Reddy for many years, had repeated business transactions with them, and had
placed a high degree of trust in them as his financial advisors.  The fact that a business relationship has
been cordial and of extended duration is not by itself evidence of a
confidential relationship.  Thigpen v.
Locke, 363 S.W.2d 247, 253 (Tex. 1962); Farah v. Mafrige & Kormanik,
P.C., 927 S.W.2d 663, 675 (Tex. App.CHouston
[1st Dist.] 1996, no writ).  Nor is
subjective trust sufficient to transform an arms-length transaction into a
fiduciary relationship.  Schlumberger
Tech. Corp. v. Swanson, 959 S.W.2d 171, 177 (Tex. 1997).  

Moreover, investment decisions inherently
require that the investor exercise due diligence rather than relying on oral
representations.  Prieto v. John
Hancock Mut. Life Ins. Co., 132 F. Supp. 2d 506, 520 (N.D. Tex. 2001).  








The investor who
seeks to blame his investment loss on fraud or misrepresentation must himself
exercise due diligence to learn the nature of his investment and the associated
risks. . . .[T]he party claiming fraud and/or misrepresentation must exercise
due diligence to discover the alleged fraud and cannot close his eyes and
simply wait for facts supporting such a claim to come to his attention. This
principle applies in a variety of contexts, including the issue presented in
this case, when the applicable statutes of limitations begin to run.

  

Id. at 514 (quoting Martinez
Tapia v. Chase Manhattan Bank, N.A., 149 F.3d 404, 409 (5th Cir.
1998)).  By reading the policies at the
time they were issued, Mauskar could have discovered the alleged
misrepresentations regarding the terms of the policies sufficient to put him on
notice of his causes of action.  See
id. at 520 (stating appropriate inquiry presumably would have disclosed
sufficient information to detect alleged misrepresentations at early
stage).  Because there was no fiduciary
or confidential relationship with the accompanying duty to disclose, Mauskar
has failed to raise a fact issue on fraudulent concealment.  

We conclude Mauskar=s causes of action,
having accrued in 1982, 1988, 1990, and 1992, are not tolled by either the
discovery rule or fraudulent concealment, but are barred by the statute of
limitations.  Accordingly, the judgment
of the trial court is affirmed.  

 

 

 

 

 

/s/        J. Harvey Hudson

Justice

 

 

 

 

Judgment rendered and Memorandum Opinion/Opinion filed June 19,
2003.

Panel consists of Justices Yates, Hudson, and Frost.











[1]  The trial
court initially awarded Hardgrove attorney fees.  However, on Mauskar=s motion to modify the judgment, the trial court
ordered that no defendant would recover attorney fees from Mauskar.  No issue on attorney fees has been raised on
appeal.  

Mauskar also sued the Prudential Insurance
Company of America, Security Mutual Insurance Company of New York, and
Provident Life and Accident Insurance Company. 
Mauskar nonsuited Provident; Mauskar dismissed his claims against
Security because of settlement; and the trial court severed and dismissed
Mauskar=s claims against Prudential because they were subject
to a class action settlement in another case. 






[2]  See also
Tex. Bus. & Com. Code Ann. ' 17.565 (stating all actions under DTPA must be
commenced within two years after the date on which the false, misleading or
deceptive act or practice occurred or within two years after the consumer
discovered or in the exercise of reasonable diligence should have discovered
the occurrence); Tex. Ins. Code Ann.
art. 21.21, ' 16(d) (stating actions under art. 21.21 must be
commenced within two years after date on which unfair method of competition or
unfair or deceptive act or practice occurred or within two years after
plaintiff discovered, or in exercise of reasonable diligence should have
discovered the occurrence); Hoover v. Gregory, 835 S.W.2d 668, 676 (Tex.
App.CDallas 1992, writ denied) ( stating cause of action
for fraud accrues when defendant makes false representations and tort cause of
action accrues when tortious act is committed). 






[3]  Tex. Civ. Prac. & Rem. Code Ann. ' 16.004(a)(4) (Vernon 2002).





[4]  Tex. Civ. Prac. & Rem. Code Ann. ' 16.051 (Vernon 1997).





[5]  Tex. Civ. Prac. & Rem. Code Ann. ' 16.003 (Vernon 2002).





[6]  Martz v.
Weyerhaeuser Co., 965 S.W.2d 584, 587 (Tex. App.CEastland 1998, no pet.).





[7]  Tex. Ins. Code Ann. art. 21.21, ' 16(d) (Vernon Supp. 2003).





[8]  Tex. Bus. & Com. Code Ann. ' 17.565 (Vernon 2002).





[9]  Ruiz, 4
S.W.3d at 841; Garrison Contractors, Inc., 927 S.W.2d at 300; Amarco
Petroleum, Inc., 889 S.W.2d at 699; Heritage Manor of Blaylock Props.,
Inc., 677 S.W.2d at 691.  





[10]  The Texas
Supreme Court has recognized that certain Aspecial
relationships@ give rise to a tort duty of good faith and fair
dealing.  See, e.g., Aranda v.
Insurance Co. of N. Am., 748 S.W.2d 210, 212B13 (Tex.
1988) (workers= compensation carrier); Arnold v. National County
Mut. Fire Ins. Co., 725 S.W.2d 165, 167 (Tex. 1987) (insurer).  However, the duty of good faith and fair
dealing has not been extended to the insurance company=s agent.  See
Natividad v. Alexsis, Inc., 875 S.W.2d 695, 698 (Tex. 1994).  In any event, the duty of good faith and fair
dealing only requires the parties to deal fairly with each other rather than
requiring one party to place the interests of the other party ahead of his own
as in the case of a fiduciary duty.  Crim.
Truck & Tractor Co. v. Navistar Int=l
Transp. Corp., 823 S.W.2d 591, 594
(Tex. 1992).