Kathy JETT, d/b/a Artistic Monuments, Appellant,

v.

TRUCK INSURANCE EXCHANGE, a Subsidiary of Farmers Insurance Group, Appellee.

No. 06–97–00028–CV.

Court of Appeals of Texas, Texarkana.

Submitted July 15, 1997.

Decided Aug. 6, 1997.

Craig L. Henry, Texarkana, for appellant.

Mark D. Cole, Louis J. Sandbote, P.C., Dallas, for appellee.

Before CORNELIUS, C.J., and GRANT and ROSS, JJ.

## OPINION

GRANT, Justice

Kathy Jett, d/b/a Artistic Monuments, appeals a summary judgment rejecting her claim concerning nonpayment of fire insurance benefits against Truck Insurance Exchange ("TIE"), a subsidiary of Farmer's Insurance Group. Her sole point of error is that the trial court erred in granting summary judgment on TIE's affirmative defense of contractual limitations. She contends that a cause of action begins to accrue when the insurer's loss becomes "due and payable," not at the time when an insurer denies the claim.

In 1988, Jett entered into a fire insurance policy agreement with TIE that insured her place of business. After a fire destroyed her business in December 1991, Jett filed a claim and presented proof of loss to TIE on March 12, 1992. On September 14, 1992, Jett filed suit against TIE in Arkansas for failure to pay a claim. TIE filed its answer on October 19, 1992, in which it expressly stated that "[Jett] made demand upon [TIE] for payment and that [TIE] has denied same." TIE also alleged in its answer that any damages Jett suffered were "as a result of the conduct of [Jett]." Jett then nonsuited the Arkansas cause of action. Over three years later, on December 14, 1995, Jett filed an identical suit against TIE in Texas. On January 12, 1996, TIE filed its answer and asserted the affirmative defense that Jett's claim was barred by the policy's contractual limitations clause, limiting the time within which to bring suit to two years and one day. TIE then filed a motion for summary judgment, which the trial court granted, solely on the limitations ground.

A party moving for summary judgment has the burden of establishing both the absence of a genuine issue of material fact and the movant's entitlement to judgment as a matter of law.[1] In deciding whether there is a disputed issue of material fact precluding summary judgment, an appellate court views all evidence in the light most favorable to the nonmovant and resolves all doubts in the nonmovant's favor.[2] An appellate court will not consider evidence that favors the movant's position unless it is uncontroverted.[3] When a defendant moves for summary judgment on the basis of an affirmative defense, the defendant must conclusively prove all essential elements of that defense.[4] A defendant movant seeking summary judgment based on the statute of limitations must (1) prove when the cause of action accrued and (2) negate the discovery rule by proving as a matter of law that there is no genuine issue of fact about when the plaintiff discovered or should have discovered the nature of the injury,[5] i.e., the wrongful act causing the injury.[6]

As a general rule, the applicable period of limitations for a claim made pursuant to a contract is four years from the date the cause of action accrues.[7] However, parties to a transaction may agree to the time in which a person must file suit on a given cause of action.[8] Insurance provisions that limit the time within which to file a suit to two years and a day are valid and binding.[9] Courts have found that when a policy provi-

1. Tex.R. Civ. P. 166a(c); *Black v. Victoria Lloyds Ins. Co.,* 797 S.W.2d 20, 23 (Tex.1990).

2. *Nixon v. Mr. Property Management,* 690 S.W.2d 546, 548–49 (Tex.1985).

3. *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.,* 391 S.W.2d 41, 47 (Tex. 1965).

4. *Swilley v. Hughes,* 488 S.W.2d 64, 67 (Tex. 1972).

5. *Burns v. Thomas,* 786 S.W.2d 266, 267 (Tex. 1990).

6. *See The Harrison County Housing Finance Corp. v. KPMG Peat Marwick, LLP,* 948 S.W.2d 941 (Tex.App.-Texarkana 1997, n.w.h.).

7. Tex. Civ. Prac. & Rem.Code Ann. § 16.004 (Vernon 1986).

8. *Culwell v. St. Paul Fire and Marine,* 79 S.W.2d 914 (Tex.Civ.App.-Eastland 1935, writ dism'd); *Taylor v. National Life and Accident Ins.* Co., 63 S.W.2d 1082 (Tex.Civ.App.-Amarillo 1933, writ dism'd).

9. *Bazile v. Aetna Casualty and Surety Co.,* 784 S.W.2d 73, 74 (Tex.App.-Houston [14th Dist.] 1989, writ dism'd).

sion limits the time within which suit may be brought is clearly for the insurer's benefit, it is a forfeiture provision, should be strictly construed, and slight evidence of waiver will be sufficient to defeat its application.[10]

To support their respective positions, both Jett and TIE rely on the policy's "suit," limitation clause:

Suit[:] No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within two years and one day next after the cause of action accrues.

However, only Jett supplements the basis for her assertions with the following "when loss payable" policy provision:

When loss payable[:] The *amount of loss* for which this Company may be liable *shall be payable sixty days after proof of loss*, as herein provided, *is received by* this Company *and ascertainment of the loss is made* either by agreement between the insured and this Company expressed in writing or by filing with this Company of an award as herein provided.

(Emphasis added).

Jett asserts that there remains a genuine issue of material fact involving when, if ever, the limitations period began. She contends that the general rule of when a contractual limitation begins to run is "when the loss becomes due and payable and the right to sue accrues, not from the moment when the loss occurs."[11] Jett looks to *Whitehead v. National Casualty Co.*[12] and *Standard Fire Insurance Co. v. Fraiman*[13] to support her assertion and bootstrap the policy's "when loss payable" provision.

In *Whitehead*, the beneficiary of the deceased did not know of the accident policy's existence, and therefore, she was unable to make a proof of loss within the policy's "when loss payable" provision. The court found that where furnishing a proof of loss is a condition precedent to liability, the limitation clock does not begin to run until the proof of loss condition is performed, or its performance is waived or excused.[14] In finding that the beneficiary was excused by her nonnegligent ignorance of the policy's existence, the court noted that the time within which to make a proof of loss was not "the essence of the contract."[15] The court concluded that the life insurer's liability became fixed at the time of the insured's death; however, the time within which to make proof of loss was not fixed.[16] Unlike the beneficiary in *Whitehead*, Jett contends that her policy's "when loss payable" provision contains *two* conditions precedent: proof of loss *and* ascertainment of loss.

In *Fraiman*, the court held that an insurer who breaches a policy's appraisal clause is liable for damage caused by that breach. In that case, the insurer refused to pay the amounts the insured claimed for building damages on a fire insurance policy. The insured then demanded an ascertainment of loss pursuant to the policy's provision. The insurance company initially refused to submit to the appraisal; however, once the court determined that an insured can enforce the appraisal provision against an unwilling insurer, the insurer paid the appraisal award. The insured then sued to recover, among other things, apartment rental loss, interest on the rental loss, and damages for the insurer's breach of the appraisal provision.

---

**10.** *Trinity Universal Ins. Co. v. Howeth*, 419 S.W.2d 704, 708 (Tex.Civ.App.-Texarkana 1967, no writ) (construing provision strictly and finding for insured because insurer waived contractual limitation provision when insurer did not deny in writing insurer's claim and induced insured to delay suit past limitation date based on insurer's empty promise of forthcoming payment).

**11.** *Whitehead v. National Casualty Co.*, 273 S.W.2d 678, 680 (Tex.Civ.App.-Fort Worth 1954, writ ref'd).

**12.** 273 S.W.2d 678.

**13.** 588 S.W.2d 681 (Tex.Civ.App.-Houston [14th Dist.] 1979, writ ref'd n.r.e.).

**14.** *Whitehead*, 273 S.W.2d at 680.

**15.** *Id.*

**16.** *Id.*

Based on the analyses of *Whitehead* and *Fraiman*, Jett asserts that before a loss becomes due and payable, there must also be an ascertainment of the loss. Jett contends that because there is no evidence of an ascertainment of loss, the limitations period has not yet begun. Further, if limitations has not yet begun, then her cause of action has not yet accrued.

The *Whitehead* case, where the insurer's liability attached at the time of death and a cause of action and limitations began when the loss became payable by proof of loss, is inapplicable to the present suit. It is inapplicable because TIE denied the entire claim and asserted that the company's liability never became fixed or attached, and therefore, no payable loss became due. Further, *Fraiman* is distinguishable because in that case, Standard Fire Insurance "did not repudiate the policy, but instead breached a procedural provision calling for the appointment of appraisers in the event the parties failed to agree as to the replacement cost of the building damages."[17]

Courts have generally held that when a policy states that the limitation period begins to run when the insured's cause of action accrues, the pivotal point in time is when liability is denied by the insurer.[18] A cause of action accrues when facts come into existence that authorize a claimant to seek a judicial remedy[19] or, stated differently, when the wrongful act effects an injury.[20] Further, an action accrues when the claimant has notice of facts sufficient to place the claimant on notice of the breach.[21]

The Texas Supreme Court, in *Murray v. San Jacinto Agency, Inc.*,[22] held that an insured accrues a cause of action at the time an insurer denies a claim, assuming that the insurer's denial of the claim was a wrongful act.[23] In *Murray*, the insurer initially denied

the insured's claim, but later, after the limitations period had run, conceded that the denial had been unwarranted. In deciding whether the cause of action accrued at the time the claim was initially denied or at the moment the insurer admitted its denial was unwarranted, the court determined that the limitations period began at the moment of the initial denial.[24] The court reasoned that "one would expect that a ... bad faith 'cause of action accrues the moment an insurer should pay a claim but fails to do so. At that moment, the insurer's wrongful conduct first causes harm to the insured.'"[25]

The *Murray* court addressed the issue of a denied claim and determined that accrual began at the time of denial. As applied to the present case, TIE denied *any* payment of Jett's claim, as evidenced by its answer in the Arkansas suit. As its summary judgment proof, TIE produced the insurance policy, the pleadings, and the answer from the Arkansas suit. The answer, filed October 19, 1992, said, "Defendant admits that a fire damaged the structure and contents on or about December 1, 1991, however deny that said fire was of unknown origin to the Plaintiff, and admits that Plaintiff made demand upon the Defendant for payment and that the Defendant has denied same." TIE's written answer put Jett on sufficient notice that her claim was denied.

Additionally, in her application of the *Whitehead* and *Fraiman* analyses, Jett effectually merges the "suit," limitations clause with the "when loss payable" clause. Specifically, she interprets a phrase within the "suit" clause that states, "all the requirements of this policy shall have been complied with," and bootstraps it to the two conditions within the "when loss payable" provision. However, this phrase should not be construed to mean all the *insured's* require-

---

17. *Fraiman*, 588 S.W.2d at 683.

18. *Howeth*, 419 S.W.2d at 706.

19. *Rose v. Baker & Botts*, 816 S.W.2d 805, 810 (Tex.App.-Houston [1st Dist.] 1991, writ denied).

20. *Murray v. San Jacinto Agency, Inc.*, 800 S.W.2d 826, 828 (Tex.1990).

21. *Rose*, 816 S.W.2d at 810.

22. 800 S.W.2d 826.

23. *Murray*, 800 S.W.2d at 828.

24. *Id.*

25. *Id.* (citing S. Ashley, *Bad Faith Liability: A State–By–State Review* § 4.05 (1987)).

ments, as Jett asserts. Rather, it should be interpreted to refer to all the *insurer's* requirements. To construe the policy otherwise would result in a gross inequity against an insured, because if an insured could not file suit against his insurer unless and until the insurer met all the insurer's requirements, an insurer could escape suit by simply failing to meet any of its own requirements. The more reasonable interpretation is that all of the insured's requirements within the policy must be met before a suit against the insurer can be brought. The "when loss payable" provision in the policy is clearly the insurer's responsibility because it simply provides a date within which the insurer is to remit benefit payments once the "Company [is] liable." The two conditions of the "when loss payable" provision, namely proof of loss and ascertainment of loss, only come into play once TIE accepts liability on a claim. Based on the reasoning above, the "when loss payable" provision is irrelevant to the "suit" clause because TIE denied *any* amount of loss when it denied the claim.

■ Alternatively, Jett contends that even if TIE's denial of Jett's claim in TIE's answer to the Arkansas litigation constitutes a denial and the limitations period began to run at that time, the policy is vague because it is silent as to the procedures TIE should follow in denying a claim and the limitations period applicable to such situations. The relevant portion to which she refers states, "No suit or action on this policy for the recovery of *any* claim shall be sustainable." (Emphasis added.) Jett contends that because the policy is vague, the four-year period of limitations set forth in TEX. CIV. PRAC. & REM.CODE ANN. § 16.004 should control. This argument fails because, once again, Jett's analysis predicates the "suit" limitation

clause with the "when loss payable" provision. Specifically, she asks this Court to strictly construe the "suit" clause in her assertion that the limitations period applies only when a dispute exists as to the *amount* of loss to be paid, not to situations where the entire claim is denied. Because Jett once again uses the requirements portion of the "suit" clause as a means to reach the "when loss payable" provision, this argument fails. Further, even under a strict construction, the "suit" clause by itself only limits time.

The provision for when a loss is payable does not affect the accrual date of Jett's cause of action. She was aware that TIE denied her claim on October 19, 1992. Therefore, her cause of action accrued at that time.

TIE met its summary judgment burden by conclusively establishing that the cause of action accrued on October 19, 1992, and that this is not a case in which the discovery rule applied. Jett filed suit in the present case on December 14, 1995, more than two years and one day after the cause of action accrued.

We affirm the summary judgment.