IN THE SUPREME COURT OF TEXAS








IN THE SUPREME COURT OF TEXAS
 
════════════
No. 05-0653
════════════
 
Gilbert Kerlin, Individually, 
Gilbert Kerlin, Trustee, 
Windward Oil & Gas Corp., 
and PI Corp., Petitioners,
 
v.
 
Concepcion Sauceda, et al., 
Respondents
 
════════════════════════════════════════════════════
On Petition for Review from the
Court of Appeals for the Thirteenth District of 
Texas
════════════════════════════════════════════════════
 
 
Argued April 22, 
2008
 
 
            
Justice O=Neill delivered the opinion of the 
Court, in which Chief Justice Jefferson, 
Justice Wainwright, Justice Medina, Justice Green, and Justice Johnson joined.
 
Justice Brister filed a concurring 
opinion, in which Justice Hecht, Justice 
Medina, 
and Justice Willett joined.
 
 
In 1829, the 
State of Tamaulipas, 
Mexico, recognized the claims 
of Padre Nicolas Balli and his nephew, Juan Jose Balli, to Padre Island. Since then, the island=s ownership has been the 
subject of numerous legal disputes, including the present one. See, e.g., U.S. v. 34,884 Acres, No. C.A. 142 (S.D. 
Tex. 1948), aff=d sub nom De Lourett v. Kerlin, 182 F.2d 750 (5th Cir. 1950); 
State v. Balli, 190 S.W.2d 71 (Tex. 1944); Havre v. Dunn, No. 6515 
(103rd Dist. 
Ct.
, Cameron County, Tex. June 29, 1928). In this 
case, more than 275 descendants of Juan Jose Balli sued Gilbert Kerlin, 
individually and as trustee, as well as his wholly owned companies, Windward Oil 
& Gas Corp. and PI Corp., asserting that Kerlin had defrauded them of oil 
and gas royalties and other interests in Padre 
Island. We hold that the Ballis= claims were not subject to 
statutory tolling and, accordingly, are time-barred. We therefore reverse and 
render judgment for the defendants.
I. Background
In 1829 the 
State of Tamaulipas 
recognized the claims of Padre Nicolas Balli and his nephew, Juan Jose Balli, to 
what is now known as Padre Island. When Padre 
Nicolas died, his interest passed by devise to his 
seven nieces and nephews, including Juan Jose. In 1830, Padre Nicolas=s heirs partitioned the 
island, leaving Juan Jose with the northern four-sevenths of the island and the 
other heirs with the southern three-sevenths. On the same day, Juan Jose 
conveyed his interest to Santiago Morales. Several months later, Morales and 
Juan Jose signed a rescission agreement after Morales became concerned about the 
clarity of Juan Jose=s 
title. Despite the rescission agreement, however, Morales later mortgaged part 
of the property and conveyed the remaining portion of the property to Jose Maria 
Tovar. The rescission agreement, in large part, formed the basis for the 
Ballis=[1] claims in this suit to an existing 
interest in Padre Island. In the 1840s, the 
other Padre Nicolas heirs conveyed their interests in the southern half of the 
island to Nicolas Grisanti.
The court of 
appeals= opinion sets 
out in some detail the history of the Ballis= claims and the various 
suits over title to Padre Island. See 
164 S.W.3d 892. For purposes of our discussion, 
however, suffice it to say that by the early 1900s the Ballis= interests in the island 
under Juan Jose Balli=s title had largely 
disappeared, either through conveyances or adverse judgments, and a federal 
court had resolved various title disputes by awarding possession of the island 
to a number of parties. See Grisanti v. Am. Trust 
Co. of N.J., No. 18 (C.C.S.D. Tex. Nov. 16, 1905).
In 1923, 
Lizzie Havre filed a trespass to try title suit against three of the defendants 
who had been awarded possession in Grisanti: 
Pat F. Dunn, Sam A. Robertson, and W. 
E. Callahan. Dunn and the other defendants cross-claimed for 
title to and possession of all of Padre Island, 
except for the southernmost 7,500 acres. The Balli heirs were cited by 
publication, but did not appear. The district court ultimately granted title and 
possession of Padre Island, but for the 
southernmost 7,500 acres, to Sam A. Robertson and W. E. Callahan. Two of the 
cross-defendants timely filed a bill of review, which remained pending until the 
late 1930s.
In 1937, 
Gilbert Kerlin=s 
uncle, Frederick Gilbert, was contacted by several people who had discovered 
evidence of an agreement to rescind the 1830 sale between Morales and Juan Jose 
Balli. Frederick Gilbert formed a partnership with them to pursue a claim to 
Juan Jose=s interests 
in the island based upon the rescission agreement=s existence. Gilbert put 
his nephew, a New York attorney, in charge of 
the venture, and Kerlin traveled to Brownsville to locate Juan Jose=s heirs and purchase their 
interests. Kerlin contacted Primitivo Balli, the 
patriarch of the family, who agreed to assist him in securing all of Juan 
Jose=s interests from 
the various heirs. Kerlin told the heirs that he was obtaining the deeds to 
clear title to Padre Island, and that each deed would reserve a 1/64th of 1/8th 
royalty in the grantor. The heirs allege Kerlin also assured them they would 
receive some compensation if he received anything through the deeds. Kerlin, as 
trustee, obtained eleven general warranty deeds from the heirs, each containing 
a reserved royalty interest.
At some 
point, Kerlin and Gilbert decided to pursue other claims to Padre Island independent of their agreement with the 
persons who had uncovered the Morales rescission agreement, and they obtained a 
number of other titles that had been cut off by the Havre v. Dunn 
judgment. Kerlin sought to vindicate all of those claims by obtaining a new 
trial and pursuing a cross-action in Havre v. Dunn. His attorney, F. W. 
Seabury, filed the motion in the name of Kerlin, the 
heirs of Juan Jose, and two other Havre v. Dunn defendants. The Ballis 
were not informed of the pending cross-action, and Seabury never communicated with them about it.
On February 
28, 1940, Kerlin, Gilbert, and Seabury met with the 
opposing parties to discuss settlement. During the meeting, Seabury argued that the deeds from the Balli grantors were 
valid and proposed that his “group” should receive forty percent of Padre Island. The case did not settle at that time, but in 
1942, Seabury submitted a written settlement proposal 
under which the Kerlin interests would receive 25,542.6 acres. The proposal 
suggested that 7,444 acres comprised “acreage that was never divested out of 
Juan Jose Balli on any theory of the case.”[2] The parties ultimately reached a 
settlement, and a hearing on the motion for new trial was set for November 9, 
1942. Kerlin, who was serving in the army at the time, obtained a three-day pass 
to attend the hearing. At the hearing, a stipulation was filed under which 
Kerlin was to receive the mineral interests in 1,000 acres of Padre Island 
located in Nueces 
County and fee simple title 
to 20,000 acres of land in the southern division of the island. During the three 
days he was in Texas, Kerlin, individually and in his 
capacity as trustee, executed reconveyance deeds to 
the Ballis. The Ballis were never informed of the deeds, nor were the deeds ever 
recorded or delivered. Kerlin also visited one of the Ballis, but he did not 
mention the Havre v. Dunn settlement.
Under the 
settlement stipulation, the parties were required to execute cross-conveyance 
deeds to each party=s 
respective acreage. One of the parties to the settlement wrote to another that 
Seabury had agreed not to give the Ballis any 
recordable instrument that could cast a cloud on the parties= title, and Gilbert advised 
Seabury that the Ballis= interest would “die in 
Kerlin.” After the settlement stipulation was executed, Seabury filed a motion to dismiss the Ballis= cross-action in Havre 
v. Dunn.
Some thirteen 
years later, in 1953, Primitivo Balli wrote two 
letters to Kerlin requesting documents showing his interest in Padre Island. Kerlin responded that he had received no 
title under the Ballis= deeds. He did not tell 
Primitivo Balli about the reconveyance deeds, or that Havre v. Dunn had been 
settled. The next year, Kerlin wrote Primitivo that he 
had been unable to establish that Juan Jose had not sold all of his interest in 
the island, and that his heirs consequently had no basis to claim any interest. 
Another eight years passed and, in 1961, Kerlin sold the 20,000-acre surface 
tract for more than $3.4 million. He also conveyed all of his mineral interests 
in the island to PI Corp., his wholly owned company. Another of Kerlin=s wholly owned companies, 
petitioner Windward Oil & Gas Corp., acquired one of Kerlin=s partner=s mineral interests in the 
island.
In 1985, some 
thirty-two years after Primitivo Balli=s inquiry and twenty-four 
years after Kerlin sold his interest, Connie Sauceda, a descendant of one of the 
Balli grantors, contacted Kerlin to inquire about the mineral interests reserved 
in the Balli deeds. Kerlin told her that the deeds were invalid, and that she 
would have the burden of proof in an expensive, time-consuming lawsuit to prove 
otherwise.
Eight years 
later, in February 1993, some of the present Balli parties sued Kerlin, 
Windward, and PI Corp.[3] Ultimately, more than 275 other Balli 
heirs joined in the action. The Ballis alleged claims for breach of contract, 
breach of fiduciary duty, fraud, and conspiracy to commit fraud and breach of 
fiduciary duty. They sought damages, declaratory relief, the imposition of a 
constructive trust, and attorneys fees. Kerlin raised 
several affirmative defenses, including that the Ballis= claims were time barred by 
the statute of limitations and laches. After a two-month trial, the jury found 
that Kerlin was estopped from contesting the validity of the deeds executed by 
the Balli heirs; that the deeds reserved a 1/64 of a 1/8 royalty interest in the 
Ballis= favor; that 
Kerlin and PI Corp. breached fiduciary duties they owed the Ballis with respect 
to their reserved royalty interests; that Kerlin conspired with Seabury to commit fraud and breach the fiduciary duty Seabury owed the Ballis in settling Havre v. Dunn; 
and that Kerlin acquired 7,500 acres of land in his own name for the Ballis= benefit which he failed to 
share with them.
Regarding 
Kerlin=s limitations 
defense and the Ballis= claim that his absence 
from the state tolled the statute=s running, the jury found 
that Kerlin had not been present in the state for either a two- or four-year 
period between the date of the Havre v. Dunn settlement and the date this 
suit was filed. In addition, the jury found that Kerlin fraudulently concealed 
the facts and circumstances of the settlement and fraudulently concealed that he 
was receiving royalty payments that belonged to the Ballis. Finally, the jury 
found that Kerlin was not physically present in the state when wrongdoing 
occurred that formed the basis of the Ballis= claims.
Because some 
courts have held that limitations is not subject to statutory tolling unless a 
nonresident committed all or part of a contractual breach or tort here, the 
Ballis moved to set aside the latter finding, contending that Kerlin=s presence in the state 
when wrongdoing occurred was established as a matter of law. See, e.g., Howard v. Fiesta Tex. Show Park, Inc., 980 
S.W.2d 716, 723 (Tex. App.CSan Antonio 1998, 
pet. denied); Wyatt v. Lowrance, 900 S.W.2d 
360, 362 (Tex. App.CHouston [14th Dist.] 
1995, writ denied). The trial court granted the Ballis= motion. Based on the other 
jury findings, the trial court rendered judgment in the Ballis= favor for unpaid 
royalties, mineral lease rentals, and prejudgment interest and attorneys fees. 
The trial court imposed a constructive trust on an undivided 37.5% mineral 
interest, but denied the Ballis= request for an equitable 
accounting. The court of appeals affirmed except for the trial court=s ruling denying an 
accounting, which it reversed and remanded to the trial court for further 
proceedings.[4] 164 S.W.3d at 
903. We granted Kerlin=s petition for review to 
consider the issues presented. 51 Tex. Sup. Ct. J. 
445, 457B58 (Feb. 18, 
2008). We begin with the threshold issues regarding limitations and fraudulent 
concealment, as their resolution is potentially dispositive of the parties= remaining claims. 
II. Limitations
Statutes of 
limitation operate to prevent the litigation of stale claims; they 
 
“afford 
plaintiffs what the legislature deems a reasonable time to present their claims 
and protect defendants and the courts from having to deal with cases in which 
the search for truth may be seriously impaired by the loss of evidence, whether 
by death or disappearance of witnesses, fading memories, disappearance of 
documents or otherwise. The purpose of a statute of limitations is to establish 
a point of repose . . . .”
 
 
S.V. v. 
R.V., 933 S.W.2d 1, 3 (Tex. 1996) (quoting 
Murray v. San Jacinto Agency, Inc., 800 S.W.2d 826, 828 (Tex. 1990)). Kerlin 
contends the Ballis= 
breach of contract, fraud, and breach of fiduciary duty claims are barred by the 
four-year statute of limitations, and that the two-year statute bars their 
conspiracy claims. The Ballis maintain that the jury=s fraudulent concealment 
findings and the tolling statute preclude the application of limitations in this 
instance. We first consider whether Kerlin=s fraudulent concealment of 
the Ballis= 
entitlement to royalty payments and the details of the Havre v. Dunn 
settlement prevented limitations from running.
A. Fraudulent Concealment
The jury 
found that Kerlin fraudulently concealed the fact that he was receiving royalty 
proceeds belonging to the Ballis, and that he fraudulently concealed the “facts, 
details, and circumstances” of the Havre v. Dunn settlement. Kerlin 
contends the jury=s 
findings must be disregarded because, as a matter of law, the Ballis could have 
timely discovered the existence of their claims through the exercise of 
reasonable diligence. We agree.
A 
defendant=s fraudulent 
concealment of wrongdoing may toll the running of limitations. Shah v. Moss, 67 S.W.3d 836, 841 (Tex. 2001). 
Fraudulent concealment will not, however, bar limitations when the plaintiff 
discovers the wrong or could have discovered it through the exercise of 
reasonable diligence. Id.; Velsicol Chem. Corp. v. Winograd, 956 S.W.2d 529, 531 (Tex. 1997); Nichols v. Smith, 507 S.W.2d 518, 519 
(Tex. 
1974). In HECI Exploration Co. v. Neel, 
oil and gas royalty owners sued their lessee for failing to advise them of the 
lessee=s successful 
suit against an adjoining operator for damages to the common field. 982 S.W.2d 881 (Tex. 1998). In evaluating the discovery 
rule=s applicability 
to the royalty owners= 
claims, we noted that royalty owners are not entitled to “make[] no inquiry for years on end,” and then sue for 
contractual breaches that could have been discovered within the limitations 
period through the exercise of reasonable diligence. Id. at 
887B88. Because 
several sources of information are available to royalty owners about potential 
damage to their mineral resources, including their lessees, Railroad Commission 
records, and visible operations on adjoining property, we held that reasonable 
diligence would likely reveal any harm, and the discovery rule did not apply. 
Id. at 
886B87. Like 
fraudulent concealment, the discovery rule does not apply to claims that could 
have been discovered through the exercise of reasonable diligence. While the 
discovery rule differs from fraudulent concealment in that its applicability is 
determined on a categorical basis, HECI is nevertheless instructive in 
this case.
After the 
Havre v. Dunn settlement, Kerlin advised the Ballis that their claims 
were worthless. Havre v. Dunn=s dismissal and Kerlin=s receipt of more than 
20,000 acres in fee simple and 1,000 mineral acres were matters of public record 
more than forty years before the Ballis filed this lawsuit. The Ballis were on 
notice that the warranty deeds their predecessors executed contained a royalty 
reservation, yet they never received any royalties. As a matter of law, the 
Ballis could have discovered the existence of any claims before limitations 
expired through the exercise of reasonable diligence. Consequently, unless 
statutory tolling applies, their claims are time barred.
B. Statutory Tolling
Kerlin argues 
that the trial court erred in setting aside the jury=s findings that he was not 
present in the state when any portion of the tortious 
acts occurred. Alternatively, he contends the tolling statute violates the 
Commerce Clause of the United States Constitution, art. I, § 8, cl. 3, to the extent that it applies to the claims against 
him, by forcing him either to consent to general jurisdiction in Texas or forego 
the benefits of statutes of limitation.[5] The Ballis respond that no evidence 
supported the jury=s 
answers to the questions the trial court disregarded, and that the 
constitutional authority Kerlin cites is inapposite. Because we conclude that 
the tolling statute does not apply in these circumstances, we need not resolve 
either of those issues.
Section 
16.063 of the Texas Civil Practice and Remedies Code provides that “[t]he 
absence from this state of a person against whom a cause of action may be 
maintained suspends the running of the applicable statute of limitations for the 
period of the person=s 
absence.” Tex. Civ. Prac. & Rem. Code § 
16.063. Thus, unless Kerlin was somehow present in the 
state for more than four years since the Havre v. Dunn settlement, 
limitations has not run on the Ballis= claims against him.[6]
A little more 
than forty years ago, in Vaughn v. Deitz, 430 S.W.2d 487 (Tex. 1968), we 
considered the interplay between the tolling statute=s substantively equivalent 
precursor, former article 5537, and article 2039a, now codified at section 
17.062 of the Civil Practice and Remedies Code, which permits substituted 
service on a nonresident involved in an automobile accident in this state by 
serving the chairman of the State Highway Commission. The narrow issue we 
decided was “whether Article 5537 . . . applies in a case where 
substituted service of process is available under the provisions of Article 
2039a.” Id. at 488. We held that it did. Id.
Article 2039a 
provided that
 
[t]he 
acceptance by . . . a person who was a resident of this 
State at the time of the accrual of a cause of action but who subsequently 
removes therefrom . . . of the 
rights, privileges and benefits extended by law to such persons of operating a 
motor vehicle . . . within the State of Texas shall be 
deemed equivalent to an appointment by such 
nonresident . . . of the Chairman of the State Highway 
Commission of this State . . . to be his true and lawful 
attorney and agent upon whom may be served all lawful process in any civil 
action or proceeding . . . hereafter instituted against said 
nonresident . . . growing out of any accident, or collision 
in which said nonresident . . . may be involved while 
operating a motor vehicle . . . within this 
State, . . . and said acceptance or operation shall be a 
signification of the agreement of said nonresident . . . that any 
such process against him . . . served upon said Chairman of 
the State Highway Commission . . . shall be of the same legal 
force and validity as if served personally.
 
 
Act of May 8, 1959, 56th Leg., R.S., ch. 
502, § 1, 1959 Tex. Gen. Laws 1103, 1103B04 (codified at Tex. Civ. Prac. & Rem. 
Code § 17.062). Article 
2039a thus created a binding legal presumption that nonresidents, by driving on 
Texas 
roadways, had appointed the chairman of the State Highway Commission their agent 
for service of process in lawsuits arising from motor vehicle accidents within 
the state. We concluded that article 5537, section 16.063=s precursor, “refer[red] to the absence of the defendant from or presence 
within the territorial limits of the state,” and the availability of substituted 
service on the Highway Commission chairman was irrelevant to that inquiry. 
Deitz, 430 S.W.2d at 490. Accordingly, 
limitations was tolled during the driver=s absence. Id.
We did not 
consider the effect of the general longarm statute in 
Deitz. Just as article 2039a deemed the Highway Commission chairman the 
agent for service of process for nonresident motorists in suits stemming from 
in-state accidents, the general longarm statute 
provides that “the secretary of state is an agent for service of process on a 
nonresident who engages in business in this state . . . in any proceeding that 
arises out of the business done in this state . . . .” Tex. Civ. Prac. & Rem. 
Code § 17.044(b). But 
unlike article 2039a, in addition to providing for substituted service, the 
general longarm statute specifically addresses a 
nonresident defendant=s presence within the 
state=s territorial 
limits for purposes of personal jurisdiction; specifically, the statute provides 
that a nonresident does business “in this state” if, among other acts, the 
nonresident contracts with a Texas resident and either party is to perform in 
whole or in part here, or the nonresident commits a tort in whole or in part in 
this state. Tex. Civ. Prac. & Rem. Code § 
17.042. Of course, the longarm 
statute only affords in personam jurisdiction if 
“jurisdiction accords with federal due‑process limitations.” Moki Mac River Expeditions v. Drugg, 221 S.W.3d 575, 569 (Tex. 2007) (citing Am. 
Type Culture Collection, Inc. v. Coleman, 83 S.W.3d 801, 806 (Tex. 2002); 
CSR Ltd. v. Link, 925 S.W.2d 591, 594 (Tex. 1996); Schlobohm v. Schapiro, 784 S.W.2d 355, 357 (Tex. 1990)). But if a 
nonresident=s contacts 
with the state are sufficient to afford personal jurisdiction under the general 
longarm statute, as it is undisputed Kerlin=s were, then we can discern 
no reason why a nonresident=s “presence” in this state 
would not be established for purposes of the tolling statute.
In this case, 
the jury found that Kerlin was receiving royalty payments that rightfully 
belonged to the Ballis from January 1, 1966, until February 8, 1991, and that he 
continued to deceive the Ballis about the Havre v. Dunn settlement from 
its execution until the same date. Thus, whether or not Kerlin was 
constructively present in Texas because he was subject to service of 
process via the secretary of state, he was present by doing business in this 
state as the statute defines that term. Because Kerlin was doing business here 
and was thus not absent from Texas, the tolling statute does not apply and 
limitations bars the Ballis= claims. Because the 
Ballis= claims are 
time barred, we need not address Kerlin=s other arguments.
III. Conclusion
The record 
conclusively establishes that the Ballis could have discovered Kerlin=s wrongful conduct through 
the exercise of reasonable diligence. In addition, the statute of limitations 
was not tolled because, under the general longarm 
statute, Kerlin was present in the state. Accordingly, the statute of 
limitations bars the Ballis= claims. We reverse the 
court of appeals= 
judgment and render judgment for Kerlin.
 
 
___________________________________
Harriet O=Neill
Justice
 
OPINION 
DELIVERED: August 29, 2008








[1] We refer to 
Juan Jose Ballis= heirs collectively as “the Ballis.”

[2] This 
contention was based not on the rescission agreement but upon an alternative 
theory that Juan Jose had only conveyed to Morales “one-half league” of the land 
he inherited and retained 7,444 acres for himself.

[3] We generally 
refer to the defendants collectively as “Kerlin,” although in some contexts we 
refer to Gilbert Kerlin individually.

[4] After 
Kerlin=s petition for review was filed, Kerlin and a group of 
plaintiffs who had reached a settlement filed a motion asking us to sever the 
equitable accounting claim and vacate that portion of the court of 
appeals= judgment.  We granted that 
motion.

[5] The Attorney 
General has submitted an amicus brief contending that the statute does not 
violate the Commerce Clause, and urging us to decide the case on alternative 
grounds.  See Van Devender v. Woods, 222 
S.W.3d 430, 432 (Tex. 2007) (“Judicial restraint cautions that when a case may 
be decided on a non‑constitutional ground, we should rest our decision on that 
ground and not wade into ancillary constitutional questions.”).

[6] The tolling 
statute plainly does not apply to the corporate defendants, Windward Oil & 
Gas Corp. and PI Corp., as it is undisputed that these Texas corporations have 
never been absent from the state.