# Supreme Court of Texas

No. 21-0513

Sibel Onasis Ferrer,

*Petitioner*,

v.

Madalena Elizabeth Almanza, Isabella P. Almanza, and
Albert Boone Almanza,

*Respondents*

On Petition for Review from the
Court of Appeals for the Seventh District of Texas

**Argued October 6, 2022**

JUSTICE HUDDLE delivered the opinion of the Court, in which Chief Justice Hecht, Justice Boyd, Justice Devine, Justice Blacklock, Justice Bland, and Justice Young joined.

JUSTICE BUSBY filed a dissenting opinion.

Justice Lehrmann did not participate in the decision.

Section 16.063 of the Civil Practice and Remedies Code tolls the running of a statute of limitations during the "absence from this state of a person against whom a cause of action may be maintained." In *Ashley v. Hawkins*, this Court concluded that Section 16.063 does not apply,

and the running of the relevant limitations period is not tolled, where the defendant permanently leaves Texas during the limitations period but remains subject to personal jurisdiction in Texas and amenable to service under the Texas long-arm statute. 293 S.W.3d 175, 179 (Tex. 2009). *Ashley* held, in other words, that a defendant's physical absence from Texas, standing alone, does not trigger the application of Section 16.063.

The question in this case is whether Section 16.063 applies when a defendant who is a Texas resident leaves the state for part of the limitations period but remains a Texas resident, subject to personal jurisdiction in Texas and amenable to service, throughout. We conclude Section 16.063 does not apply under these circumstances for the same reasons it did not in *Ashley*. We therefore hold that Section 16.063 did not toll the running of the statute of limitations during Isabella Almanza's physical absence from Texas and affirm the summary judgment in her favor.

## I. Background

Sibel Ferrer was a passenger in a car involved in an accident with another car driven by Isabella Almanza. The accident happened in February 2017, and Ferrer sued for personal injuries in January 2019. But Ferrer's petition incorrectly named Isabella's sister, Madalena, as the driver–defendant. Ferrer also sued Madalena's (and Isabella's) father, alleging negligent entrustment. Madalena and her father filed a verified denial in which they asserted that Madalena "was not a part of or party to the incident that makes the basis of this suit." And in response to Ferrer's request for disclosure, they identified Isabella as

2

the person who had been driving when the accident occurred. Ferrer amended her petition to name Isabella as a defendant in May 2019, which was two years and three months after the accident.

Isabella lived in Texas at the time of the accident, but in 2018 she enrolled at Harvard University in Massachusetts. Yet Isabella returned to Texas during breaks, maintained a Texas mailing address, and kept her Texas driver license throughout the limitations period. After Ferrer amended her petition to name Isabella as a defendant, she tried serving Isabella at her family's Austin home. During one such attempt at personal service, Isabella's father, who is a lawyer, offered to accept service on her behalf. Ferrer instead moved for substituted service, which the trial court granted. Isabella was, in fact, at her family's home when the process server arrived to carry out the substituted service, so Isabella was personally served at that time, in July 2019.

The next month, Isabella answered and moved for summary judgment based on the two-year statute of limitations. *See* TEX. CIV. PRAC. & REM. CODE § 16.003(a). In response, Ferrer amended her petition to allege that the running of the statute of limitations was tolled by Civil Practice and Remedies Code Section 16.063 while Isabella was in Massachusetts. Section 16.063 says:

> The absence from this state of a person against whom a cause of action may be maintained suspends the running of the applicable statute of limitations for the period of the person's absence.

*Id.* § 16.063. Ferrer contends that Isabella was absent from Texas for 225 days between August 2018 and May 2019. She argues the running

3

of the limitations period was suspended during that time, making her May 2019 amended petition timely.

The trial court granted summary judgment for Isabella, and the court of appeals affirmed. 647 S.W.3d 726, 729 (Tex. App.—Amarillo 2021).[1] Ferrer petitioned for review.

## II. Applicable Law

Statutes of limitations have long been an important feature "in all systems of enlightened jurisprudence." *Wood v. Carpenter*, 101 U.S. 135, 139 (1879). They "are vital to the welfare of society and are favored in the law" because they "promote repose by giving security and stability to human affairs." *Id.*; *see also Murray v. San Jacinto Agency, Inc.*, 800 S.W.2d 826, 828 (Tex. 1990) (recognizing that statutes of limitations reflect the Legislature's determination of what is a reasonable time to present a claim). By terminating claims the Legislature has deemed stale, statutes of limitations "protect defendants and the courts from having to deal with cases in which the search for truth may be seriously impaired by the loss of evidence, whether by death or disappearance of witnesses, fading memories, disappearance of documents or otherwise." *Murray*, 800 S.W.2d at 828.

Statutes of limitations are themselves bright-line rules, requiring a person to bring suit within a specified time after the cause of action accrues. *See, e.g.*, TEX. CIV. PRAC. & REM. CODE § 16.003(a) (identifying various claims that must be brought "not later than two years after the day the cause of action accrues"). But the Legislature has also defined

---

[1] Ferrer nonsuited her claims against Isabella's father and Madalena, making the summary-judgment order a final, appealable judgment.

4

particular circumstances in which the typically hard and fast limitations deadline may not apply. *See id.* § 16.001(b) ("If a person entitled to bring a personal action is under a legal disability when the cause of action accrues, the time of the disability is not included in a limitations period."); *id.* § 16.0045(d) (tolling the limitations period for personal-injury claims based on certain sexual crimes where the defendant's identity is unknown). If a tolling provision applies, it delays or tolls the running of the applicable limitations period.

Civil Practice and Remedies Code Section 16.063 is one such tolling statute. Enacted in 1841, five years after Texas became an independent republic, its predecessor statute provided that "the time of [a defendant]'s absence shall not be accounted" as part of the limitations period if the defendant was "without the limits of this republic" at any time during which suit could be brought.[2] Except for replacing

---

[2] The statute, then part of "An Act of Limitations," provided:

> [I]f any person against whom there is or shall be cause of action, is or shall be without the limits of this republic at the time of the accruing of such action, or at any time during which the same might have been maintained, then the person entitled to such action shall be at liberty to bring the same against such person or persons after his or their return to the republic and the time of such persons' absence shall not be accounted, or taken as a part of the time limited by this act.

Act approved Feb. 5, 1841, 5th Cong., R.S., § 22, 1841 Repub. Tex. Laws 163, 170, *reprinted in* 2 H.P.N. Gammel, *The Laws of Texas 1822–1897*, at 627, 634 (Austin, Gammel Book Co. 1898).

5

"republic" with "state" and some minor grammatical edits, this tolling statute remained unchanged for over 140 years.[3]

Nineteenth-century authorities applied this tolling provision to protect domestic creditors from "the absence of their debtors." *Ayres v. Henderson*, 9 Tex. 539, 541 (1853) (holding statute applied to a claim against a defendant who had permanently moved away from Texas and thus tolled the running of limitations as long as there was some possibility the defendant might return to Texas). Tolling the running of a statute of limitations when debtors fled the republic (and, later, the state) to avoid debts was crucial because, under contemporaneous rules governing personal jurisdiction and service, physical absence from Texas equated to immunity from judgment. *Id.*; *see also Teal v. Ayres*, 9 Tex. 588, 593 (1853) (recognizing that the physical absence of a debtor amounted to "exemption from process and judgment"). This was, of course, consistent with the United States Supreme Court's holding in 1877 that a court could not constitutionally determine a defendant's

---

[3] When the Legislature established the Texas Revised Civil Statutes in 1925, the statute was enacted as Article 5537, under the heading "Temporary Absence," as follows:

> If any person against whom there shall be cause of action shall be without the limits of this State at the time of the accruing of such action, or at any time during which the same might have been maintained, the person entitled to such action shall be at liberty to bring the same against such person after his return to the State and the time of such person's absence shall not be accounted or taken as a part of the time limited by any provision of this title.

TEX. REV. CIV. STAT. art. 5537 (1925), *repealed by* Act of May 17, 1985, 69th Leg., R.S., ch. 959, § 9, 1985 Tex. Gen. Laws 3242, 3322. The Legislature made no changes to Article 5537 until 1985.

personal liability unless the court acquired jurisdiction "by service of process within the State, or [the defendant's] voluntary appearance." *Pennoyer v. Neff*, 95 U.S. 714, 733 (1877); *see also Burnham v. Superior Ct.*, 495 U.S. 604, 616 (1990) (plurality op.) ("The view of most courts in the 19th century was that a court simply could not exercise *in personam* jurisdiction over a nonresident who had not been personally served with process in the forum.").

But while the tolling statute's text remained essentially unchanged from its enactment in 1841 to 1985, that time period saw revolutionary change in the law of personal jurisdiction and service. The *Pennoyer* rule was diluted over time. *Burnham*, 495 U.S. at 617 (plurality op.). Texas, like other states, enacted a statute permitting service on nonresident motorists who caused accidents on Texas roads by appointing the Chairman of the State Highway Commission as the nonresident driver's agent for service in Texas. Act of Feb. 19, 1929, 41st Leg., R.S., ch. 125, § 1, 1929 Tex. Gen. Laws 279, 279–80 (current version at TEX. CIV. PRAC. & REM. CODE §§ 17.061–.069). The Legislature acknowledged this was in response to the rigid physical-presence requirement for service, noting that, at that time, "we have no adequate means of serving civil process on non-residents of the State who are involved in such accidents." *Id.* § 2. The U.S. Supreme Court had upheld similar laws on a theory that the nonresident gave "implied consent" to the appointment of a resident agent. *Hess v. Pawloski*, 274 U.S. 352, 356 (1927).

Then, in 1945, the U.S. Supreme Court retreated from *Pennoyer* entirely in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945).

7

Whereas *Pennoyer* had required a defendant's "presence within the territorial jurisdiction of a court" to render a judgment against that defendant, *Int'l Shoe*, 326 U.S. at 316 (citing *Pennoyer*, 95 U.S. at 733), the *International Shoe* Court concluded that courts could bind a defendant to a personal judgment if the defendant had "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id.* (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). In response, Texas and most other states enacted long-arm statutes through which a nonresident that "engages in business in this State," including "the committing of any tort in whole or in part in this State," could be served with process by serving the Secretary of State. Act of Mar. 18, 1959, 56th Leg., R.S., ch. 43, §§ 3, 4, 1959 Tex. Gen. Laws 85, 85–86 (current version at TEX. CIV. PRAC. & REM. CODE §§ 17.041–.045).

With physical presence no longer a prerequisite to obtaining jurisdiction and a judgment, states began to apply their own tolling statutes based on whether a defendant was subject to jurisdiction during the limitations period, not based on the defendant's physical presence in the state. *See, e.g.*, *Peters v. Tuell Dairy Co.*, 35 So. 2d 344, 345 (Ala. 1948) (concluding a statute that excludes from the limitations period the time a defendant is "absent from the state" does not apply if service could be secured on the defendant). Texas initially resisted. In *Vaughn v. Deitz*, a divided Court held that the tolling statute applied to a claim against a motorist who had left Texas after an accident, despite the availability of service on the State Highway Commission's chairman. 430 S.W.2d 487, 490 (Tex. 1968). The Court rejected the defendants'

argument that the tolling statute should not apply when a defendant is subject to personal jurisdiction during the limitations period, though it recognized that this was "the majority view" among states with similar tolling statutes. *Id.* at 489; *see also id.* at 491 (Pope, J., dissenting) (noting that "almost all" other states with similar tolling statutes have held that "the presence or absence of a defendant must be solved in terms of jurisdiction over the person"). The Court instead held that the statute's use of the phrases "without the limits of this State" and "after his return to the State" "obviously refer[red] to the absence of the defendant from or presence within the territorial limits of the state." *Id.* at 490 (quoting TEX. REV. CIV. STAT. art. 5537 (repealed 1985)).

The Legislature enacted the current version of the tolling statute as Section 16.063 of the Civil Practice and Remedies Code in 1985. Although the act codifying the Civil Practice and Remedies Code stated that it did not intend any substantive change, Act of May 17, 1985, 69th Leg., R.S., ch. 959, § 10, 1985 Tex. Gen. Laws 3242, 3322, the Legislature deleted from the text two phrases upon which *Deitz* relied: the statute's reference to a defendant's being "without the limits of this State" and the statement that a plaintiff could bring an action "after [the defendant's] return to the State." *Compare* TEX. CIV. PRAC. & REM. CODE § 16.063 *with* TEX. REV. CIV. STAT. art. 5537.

Though it had embraced the minority view in *Deitz*, the Court reversed course after these statutory changes were effected. In *Kerlin v. Sauceda*, 263 S.W.3d 920 (Tex. 2008), the Court held that Section 16.063 did not toll the running of the statute of limitations because the defendant, though not physically present in Texas during

9

the limitations period, was never "absent from Texas" for purposes of Section 16.063. *Id.* at 928. Rather, he was present in Texas for purposes of the tolling statute because he was "amenable to service of process under the longarm statute and ha[d] contacts with the state sufficient to afford personal jurisdiction." *Id.* at 927. But *Kerlin* did not overrule *Deitz*. Instead, a five-justice majority concluded that the general long-arm statute, unlike the nonresident-motorist statute in *Deitz*, established the defendant's "presence within the state's territorial limits for purposes of personal jurisdiction." *Id.* Yet four justices would have overruled *Deitz* and simply held that "a person whose minimum contacts make them amenable to suit in a state cannot fairly be said to be 'absent from the state.'" *Id.* at 928 (Brister, J., concurring).

One year after deciding *Kerlin*, the Court expressly (and unanimously) overruled *Deitz*, holding that Section 16.063 did not toll the running of a statute of limitations against a defendant who permanently left Texas following a car accident but was otherwise amenable to service under either the nonresident-motorist statute or the general long-arm statute. *Ashley*, 293 S.W.3d at 177–79. Since then, our courts of appeals have applied Section 16.063 inconsistently. Some concluded that a Texas resident who was at all times subject to Texas courts' jurisdiction and amenable to service was never "absent" from Texas under *Kerlin* and *Ashley* despite intermittent excursions outside the state's boundaries. *See Zavadil v. Safeco Ins. Co. of Ill.*, 309 S.W.3d 593, 596 (Tex. App.—Houston [14th Dist.] 2010, pet. denied); *see also Martin-de-Nicolas v. Octaviano*, No. 03-19-00160-CV, 2020 WL 6789093, at *3 (Tex. App.—Austin Nov. 19, 2020, pet. denied); *Liptak v.*

10

*Brunson*, 402 S.W.3d 909, 913 (Tex. App.—Dallas 2013, no pet.). But the First Court of Appeals distinguished *Kerlin* and *Ashley* because they involved nonresident defendants. *Medina v. Tate*, 438 S.W.3d 583, 589–90 (Tex. App.—Houston [1st Dist.] 2013, no pet.). It read the phrase "absence from this state" to refer only to a defendant's physical absence, without regard to the meaning *Kerlin* and *Ashley* ascribed to that phrase. *Id.* at 590. Accordingly, it regarded the defendant's amenability to personal jurisdiction and service irrelevant and held that physical absence for "several days" tolled the running of the statute of limitations under the "plain language of section 16.063." *Id.* at 588 (citing *Winston v. Am. Med. Int'l, Inc.*, 930 S.W.2d 945, 955 (Tex. App.—Houston [1st Dist.] 1996, writ denied)). We granted review to resolve our courts of appeals' conflict on the issue.

### III. Analysis

Ferrer concedes that, under *Ashley*, whether a defendant is "absen[t] from this state" under Section 16.063 turns not on her physical location but, rather, on whether the defendant remains subject to personal jurisdiction in Texas and amenable to service. Ferrer does not ask us to overrule *Ashley*. She instead argues that *Ashley* is inapplicable because, unlike Isabella, the defendant in *Ashley* ceased being a Texas resident after the plaintiff's claim accrued. *See Medina*, 438 S.W.3d at 590 (concluding that *Kerlin* and *Ashley* "deal[t] with nonresidents" and thus have no application to a claim against a Texas resident). Ferrer contends that Texas courts have "long recognized" that Section 16.063 and its predecessors apply "only to Texas residents." *See id.* at 589 ("Section 16.063 has consistently been interpreted, as a general rule, to

11

apply only to Texas residents." (citing *Guardia v. Kontos*, 961 S.W.2d 580, 584 (Tex. App.—San Antonio 1997, no pet.), and *Mourning v. Crown Stevedoring Co.*, 417 S.W.2d 725, 726 (Tex. App.—Waco 1967, no writ))). Ferrer thus argues that when, as in this case, the defendant *is* a Texas resident, Section 16.063 tolls limitations for the periods of time during which the defendant was physically absent from the state.

Ferrer's argument is based on a misreading of the statute and our precedents. Nothing in the text of Section 16.063 suggests that it applies only to Texas residents. If the Legislature intended to limit Section 16.063's application to Texas residents, it certainly could have said so expressly. And this Court has never held that the application of Section 16.063 (or its predecessors) depends on whether the defendant is a Texas resident. *Snoddy v. Cage*, the source of the purported "general rule" that Section 16.063 applies only to Texas residents, held that the tolling statute did not apply to claims against a defendant who "never was in [Texas] before" the cause of action accrued. 5 Tex. 106, 110 (1849). *Snoddy* cannot be read to mean that the tolling statute is inapplicable to nonresidents altogether, especially when the defendant was in Texas when the claim accrued. Ferrer's interpretation would lead to the odd result that a resident defendant who leaves Texas would be subject to tolling under Section 16.063 if the plaintiff sued before the defendant established residency elsewhere, but not if the plaintiff sued after the defendant established residency elsewhere, because the defendant would then be subject to the long-arm statute. As we recognized in *Ashley*, having Section 16.063's applicability turn on how jurisdiction over the defendant was obtained would be "unworkable and

12

inefficient" and would "create confusion when litigants attempt to determine if the tolling statute applies to their cases." 293 S.W.3d at 179.

Ferrer's attempt to distinguish *Ashley* is likewise unconvincing. As in this case, the defendant in *Ashley* was a Texas resident and was physically present in Texas when the cause of action accrued. That defendant then moved to another state. Under the Court's pre-*International Shoe* precedents, the running of the limitations period would have been tolled under Section 16.063. *See Ayres*, 9 Tex. at 541 (applying the tolling statute to a defendant that incurred an obligation while living in Texas but then permanently moved to another state). *Ashley* held instead that the defendant's physical departure from Texas was not an "absence from this state" for purposes of Section 16.063 because she was amenable to service of process under the long-arm statute. 293 S.W.3d at 178–79. The Court thus determined that Section 16.063 did not toll the running of the limitations period. *Id.* at 179.[4]

---

[4] The dissent contends that *Ashley* and *Kerlin* are distinguishable because, in those cases, the long-arm statute appointed an in-state agent for service, rendering the defendants constructively present in Texas. *See post* at 12–14 (Busby, J., dissenting). This contention has no support in the Court's opinions. The holdings in both cases turned on the defendants' having minimum contacts sufficient to create personal jurisdiction. *See Kerlin*, 263 S.W.3d at 927 (distinguishing the long-arm statute from the nonresident-motorist statute, which also appoints an in-state agent, because the long-arm statute "provides that a nonresident does business 'in this state'" and thus "has contacts with the state sufficient to afford personal jurisdiction"); *Ashley*, 293 S.W.3d at 179 ("[W]e . . . hold, as we did in *Kerlin*, that a defendant is 'present' in Texas, for purposes of the tolling statute, if he or she is amenable to service under the general longarm statute, as long as the defendant has

13

Here, Isabella physically left Texas to attend college in August 2018, some eighteen months after the February 2017 accident. And Ferrer does not dispute that Isabella remained subject to the personal jurisdiction of Texas courts and amenable to service of process throughout the two-year limitations period. The uncontroverted evidence reflects she maintained the mailing address of her family's home in Texas as her own, so Ferrer could have served her by mailing a copy of the citation and petition to her by registered or certified mail. TEX. R. CIV. P. 106(a)(2). In the event Ferrer was unsuccessful in obtaining actual service, she could move for substituted service, which she in fact did. TEX. R. CIV. P. 106(b). And the record does not reflect any effort to evade service—to the contrary, Isabella's father (a lawyer) offered to accept service on her behalf, and the process server successfully served Isabella in person at her family's home after Ferrer obtained an order for substituted service. Thus, applying the interpretation of "absence from this state" that we adopted in *Ashley*, Isabella was never absent from Texas for purposes of Section 16.063.[5]

---

'contacts with the state sufficient to afford personal jurisdiction.'" (quoting *Kerlin*, 263 S.W.3d at 927)).

[5] Our dissenting colleague faults us for considering *International Shoe* and other developments in the law of personal jurisdiction, suggesting that, in doing so, we are following a "federal fad." *Post* at 10 (Busby, J., dissenting). But it is the dissent's theory that would start an unwise trend. Imbuing a tolling provision—an exception to bright-line limitations statutes—with the expansive meaning the dissent would give it would make the exception swallow the legislatively determined rules that establish the fixed periods in which plaintiffs must present their claims. This would, in turn, create great uncertainty for parties and courts alike. Would a two-year limitations period double in length for Texans, like truck drivers and flight attendants, who

14

Ferrer and our dissenting colleague argue that applying *Ashley*'s interpretation of "absence from this state" to Texas residents would render Section 16.063 a nullity because there would be no case in which Section 16.063 would apply. *Post* at 15–16 (Busby, J., dissenting). Isabella posits that Section 16.063 would still apply to transient defendants who commit a tort in Texas but have no permanent address and are not otherwise amenable to service. Courts, to be sure, should strive to avoid construing a statute in a manner that could render it meaningless, but courts cannot adopt a construction that would be unreasonable. *See Perkins v. State*, 367 S.W.2d 140, 146 (Tex. 1963) ("[A] cardinal rule of statutory construction is that each sentence, clause and word is to be given effect *if reasonable and possible*." (emphasis added)); *see also Sirius XM Radio, Inc. v. Hegar*, 643 S.W.3d 402, 407 (Tex. 2022) (noting that courts cannot consider the construction of a statute that is unreasonable or contradicts the statute's plain language). Nothing in the statute's text or history, and nothing in our precedents,

_____

regularly commute across the state's border? Do only overnight trips outside the Lone Star State extend the limitations period? Would every case in which limitations is potentially at issue result in discovery of the defendant's daily physical location during the limitations period? Our dissenting colleague's approach would undercut both the legislative determinations of what constitutes a reasonable amount of time in which to present a claim and our own well-established efforts to embrace bright-line rules in the limitations context. *See Zive v. Sandberg*, 644 S.W.3d 169, 175 (Tex. 2022) ("In the area of limitations, bright-line rules generally represent the better approach." (quoting *Apex Towing Co. v. Tolin*, 41 S.W.3d 118, 122 (Tex. 2001)) (cleaned up)).

supports Ferrer's attempt to interpret "absence from this state" one way if the defendant is a Texas resident and another if the defendant is not.[6]

Our reading of Section 16.063 is further bolstered by the Legislature's 1985 amendments to the statute. *Deitz*'s pre-1985 holding that the tolling statute's application turned on a defendant's physical absence relied on the tolling statute's references to a defendant "without the limits of this State" and to bringing suit against a defendant "after his return to the State." 430 S.W.2d at 490 (quoting TEX. REV. CIV. STAT. art. 5537 (repealed 1985)). The Legislature deleted both phrases when it codified Section 16.063. *See* TEX. CIV. PRAC. & REM. CODE § 16.063. *Ashley*'s overruling of *Deitz* was consistent with these statutory changes.

Ferrer argues that we cannot consider these statutory amendments because the Legislature, in codifying the Civil Practice and Remedies Code, intended "no substantive change" in the law. Act of May 17, 1985, 69th Leg., R.S., ch. 959, § 10, 1985 Tex. Gen. Laws 3242, 3322. But the Legislature may have deleted the phrases on which *Deitz* relied to repudiate *Deitz* and restore the tolling statute's original meaning, which linked a defendant's "absence" with the inability to obtain

---

[6] Our dissenting colleague argues that it "makes no sense" to conclude that a defendant is only "absen[t] from this state" when that defendant is not subject to personal jurisdiction and amenable to service. *Post* at 4 (Busby, J., dissenting). Yet that is what the Court held in *Ashley*, and no party has suggested that case was wrongly decided. The dissent instead relies on the phrase "a person against whom a cause of action may be maintained" to contend that Section 16.063 applies only to persons over whom a court already has jurisdiction. *Id.* at 3–4 (Busby, J., dissenting). But the better reading of this phrase—and the only one consistent with *Ashley*—is that it makes no reference to any jurisdictional inquiry but, rather, merely identifies the person against whom suit is contemplated.

jurisdiction and service. *See Ayres*, 9 Tex. at 541 (noting the statute protected domestic creditors from "the absence of their debtors and consequent immunity of the latter from process and judgment"); *Teal*, 9 Tex. at 593 (noting the statute protected domestic creditors from injury by "the absence of [their] debtor[s], and consequent exemption from process and judgment, in a suit commenced by personal service or notice"). In any event, courts must generally interpret the words of a codified statute as it has been enacted by the Legislature regardless of any statement asserting that changes are not substantive. *Fleming Foods of Tex., Inc. v. Rylander*, 6 S.W.3d 278, 284 (Tex. 1999). The text of Section 16.063 provides no support for construing "absence from this state" to mean different things depending on whether the defendant is a Texas resident.

Finally, we see no reason (and Ferrer has not asked us) to reconsider *Ashley*'s holding. The Legislature has had ample opportunity to amend Section 16.063 since *Ashley*. The fact that it has not done so counsels us not to disturb that holding here. *See Sw. Bell Tel. Co. v. Mitchell*, 276 S.W.3d 443, 447 (Tex. 2008) ("'[I]n the area of statutory construction, the doctrine of *stare decisis* has its greatest force' because the Legislature can rectify a court's mistake, and if the Legislature does not do so, there is little reason for the court to reconsider whether its decision was correct." (footnote omitted) (quoting *Marmon v. Mustang Aviation, Inc.*, 430 S.W.2d 182, 186 (Tex. 1968))).

## IV. Conclusion

*Ashley* held that "absence from this state" under Section 16.063 depends not on physical location but, rather, on whether a defendant is

17

subject to personal jurisdiction and service. That holding applies to resident and nonresident defendants with equal force. If a defendant is subject to personal jurisdiction in Texas and amenable to service, he or she is not absent from Texas under Section 16.063, and Section 16.063 does not apply. Isabella Almanza remained subject to personal jurisdiction in Texas and amenable to service throughout the applicable two-year limitations period despite attending college outside Texas for several months. Accordingly, Section 16.063 did not toll the running of the statute of limitations. The court of appeals' judgment is affirmed.

Rebeca A. Huddle
Justice

**OPINION DELIVERED:** April 28, 2023

18